**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP.,<br><br>                Plaintiff,<br><br>v.<br><br>ORACLE CORP.,<br><br>                Defendant. | Case No. 7:24-CV-00339-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT ORACLE CORP.'S MOTION TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF CALIFORNIA OR, IN THE
ALTERNATIVE, TO THE AUSTIN DIVISION OF THE WESTERN
DISTRICT OF TEXAS UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................. 1

II.  Background ................................................................................................................. 2

   A.   VirtaMove Asserts Two Patents Against Third Party Functionality ................................ 2

   B.   Amazon And Google's Transfer Motions To NDCA Were Granted ................................ 3

   C.   Relevant Evidence And Witnesses Are Concentrated In NDCA ..................................... 3

      1.   Kubernetes Evidence and Witnesses Are in NDCA ...................................................... 3

      2.   Docker Evidence and Witnesses Are in NDCA ............................................................ 3

      3.   Prior Art Evidence and Witnesses Are in NDCA ......................................................... 4

   D.   VirtaMove Has No Connection To This District ............................................................ 5

   E.   The Key Oracle Employees Are In NDCA And Various Locations, Not Texas................ 5

III. Legal Standard ............................................................................................................ 6

IV.  This Case Should Be Transferred To NDCA ............................................................. 7

   A.   VirtaMove Could Have Brought This Action In NDCA ................................................. 7

   B.   The Private Interest Factors Favor Transfer To NDCA.................................................. 7

      1.   The Availability of Compulsory Process Strongly Favors Transfer............................... 8

      2.   Relative Ease of Access to Sources of Proof Favors Transfer...................................... 9

      3.   Judicial Economy Strongly Favors Transfer................................................................ 10

      4.   Cost of Attendance for Willing Witnesses Favors Transfer ........................................ 11

   C.   The Public Interest Factors, On Balance, Favor Transfer To NDCA............................. 12

      1.   The Localized Interests of NDCA Favors Transfer...................................................... 12

      2.   The Remaining Factors Are Neutral ........................................................................... 13

V.   Alternatively, This Case Should Be Transferred To Austin ...................................... 14

   A.   The Private Interest Factors, on Balance, Favor Transfer To Austin ............................. 14

      1.   Relative Ease of Access to Sources of Proof Favors Transfer.................................... 14

      2.   Cost of Attendance for Willing Witnesses Favors Transfer ........................................ 14

      3.   Availability of Compulsory Process Is Neutral ........................................................... 15

      4.   Judicial Economy Favors Transfer ............................................................................. 15

   B.   The Public Interest Factors, On Balance, Favor Transfer To Austin.............................. 15

      1.   Austin's Local Interest Favors Transfer ..................................................................... 15

      2.   All Other Public Interest Factors Are Neutral ............................................................ 15

VI.  Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)......................................................................................9

*ACQIS LLC v. EMC Corp.*,
67 F. Supp. 3d 769 (E.D. Tex. 2014)............................................................................12

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) ...............................................................................14

*In re Apple*,
581 F. App'x 886 (Fed. Cir. 2014) .................................................................................8

*In re Apple*,
979 F.3d 1332 (Fed. Cir. 2020)...............................................................................11, 13

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ....................................................................................13, 14

*Fujitsu Ltd. v. Tellabs, Inc.*,
639 F. Supp. 2d 761 (E.D. Tex. 2009)..........................................................................10

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) .......................................................................................6

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ........................................9

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009).....................................................................................13

*In re Hulu, LLC*,
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ......................................8, 9

*ICharts LLC v. Tableau Software, LLC*,
No. 1:23-CV-01225-DII, 2024 WL 2305214 (W.D. Tex. May 21, 2024) ....................11

*Intell. Ventures I LLC v. Hewlett Packard Enter. Co.*,
No. 6:21-cv-0226-ADA, ECF No. 49 .............................................................................4

*Invitrogen Corp. v. Clontec Lab'ys, Inc.*,
429 F.3d 1052 (Fed. Cir. 2005)......................................................................................8

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) .........................................................................7, 9

*Koss Corp. v. Plantronics, Inc.*,
  No. 6:20-cv-663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) .................................9

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009).........................................................................2

*Open Text Corp. v. Alfresco Software, Ltd.*,
  No. 6:20-CV-00928-ADA, ECF No. 149 (W.D. Tex. Nov. 22, 2021)..................................11

*PersonalWeb Techs., LLC v. NEC Corp. of Am.*,
  No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ...........................................10

*In re Planned Parenthood Fed'n. of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) .........................................................................7, 10

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .........................................................................7

*Red Rock Analytics, LLC v. Apple Inc.*,
  No. 6:21-cv-00346-ADA, ECF No. 172 (W.D. Tex. Mar. 4, 2025)..................................12

*In re Samsung Elecs. Co., Ltd.*,
  2 F.4th 1371 (Fed. Cir. 2021) .........................................................................13

*Smarter Agent, LLC v. Redfin Corp.*,
  No. 6:21-cv-01172-ADA, 2022 WL 2835861 (W.D. Tex. July 20, 2022)............................15

*Texas v. Google LLC*,
  No. 4:20-CV-957-SDJ, 2021 WL 2043184 (E.D. Tex. May 20, 2021)..................................10

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) .........................................................................11

*In re TOA Techs., Inc.*,
  543 F. App'x 1006 (Fed. Cir. 2013) .........................................................................13

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014).........................................................................11

*Uniloc USA, Inc. v. Apple Inc.*,
  No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ............................9

*VLSI Tech. LLC v. Intel Corp.*,
  No. 6:19-CV-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019)............................14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (*en banc*) ...................................................................7

*XY, LLC v. Trans Ova Genetics, LC*,
  No. W-16-CA-0447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...................................9

**Statutes**

28 U.S.C. § 1400(b) .........................................................................................................7

28 U.S.C. § 1404(a) ...................................................................................................1, 6, 7

**Other Authorities**

Federal Rules of Civil Procedure, Rule 45(c)(1)(A) .......................................................8

Federal Rules of Civil Procedure, Rule 45(c)(1)(B)(ii) .................................................8

## I.    <u>INTRODUCTION</u>

Defendant Oracle Corp. ("Oracle") respectfully requests transfer of this action to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a) because NDCA is clearly the more convenient forum under the public and private interest factors.  Critical third-party evidence relevant to the accused technology and to the invalidity and unenforceability of the two asserted patents is located in NDCA.  Moreover, two cases in which VirtaMove Corp. ("VirtaMove") is asserting the *same* two patents against products using *overlapping* third-party open-source functionality have been ordered transferred to NDCA.

In its cases against Oracle and others, VirtaMove accuses the use of open-source technologies called "Kubernetes" and "Docker" of infringement.  These technologies were developed largely in NDCA.  Kubernetes is an open-source platform managed by the Cloud Native Computing Foundation ("CNCF"), a sub-foundation of the Linux Foundation, both with principal places of business in NDCA.  Docker is an open-source platform developed by Docker, Inc. in NDCA.  Prior art systems also were developed in NDCA, including "Solaris," which was developed by Sun Microsystems in NDCA and acquired by Oracle in 2010.  Solaris prior art is the subject of inequitable conduct claims brought by other defendants in their cases against VirtaMove.  This nexus to NDCA tips the factors strongly in favor of transfer.

Judicial economy also compels transfer.  Magistrate Judge Gilliland ordered VirtaMove's cases against Amazon and Google based on the same patents and technology transferred to NDCA.

In contrast, this case has no significant connections to WDTX.  VirtaMove is a Canadian company.  The named inventors on the patents reside outside of Texas.  Oracle has not identified any key engineers or decision-makers in Texas, and VirtaMove has not identified any relevant witnesses, either.  No development work on the asserted patents or the accused Kubernetes/Docker functionality occurred in Texas.  The center of gravity of this litigation is NDCA.  Where, as here,

"the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff," the case should be transferred. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (citations omitted).

If the Court declines transfer to NDCA, it should transfer the case to the Austin Division. Though less convenient than NDCA, Austin is more convenient than this Division because Oracle has its headquarters in Austin, it will save time and money for the numerous witnesses who will need to travel to Texas from out of state for trial, and neither party has a presence in this Division.

Oracle requests that the Court transfer this case to NDCA or, in the alternative, to Austin.

## II.   <u>BACKGROUND</u>

### A.   **VirtaMove Asserts Two Patents Against Third Party Functionality**

VirtaMove's First Amended Complaint ("FAC") asserts that Oracle Cloud Infrastructure ("OCI") and Oracle Kubernetes Engine ("OKE") infringe U.S. Pat. Nos. 7,519,814 and 7,784,058 (the "Asserted Patents"). FAC, ECF No. 21 ¶¶ 15, 26.  Oracle did not develop many of the technologies that VirtaMove accuses in this case.  VirtaMove's infringement contentions focus on use of open-source software tools, Docker and Kubernetes, to perform containerization. *See, e.g.*, Ex. 1[1] at 5, 43.  Containerization is a method of encapsulating an application and its runtime environment into a self-contained unit called a container to make the application more portable, consistent, and, in many instances, easier to scale up by adding more containers. *See* Ex. 2.

VirtaMove's lawsuit against Oracle mirrors the five others that VirtaMove has filed against companies based on their use of Kubernetes and Docker software. *See VirtaMove, Corp. v. Amazon.com, Inc.*, No. 7:24-cv-00030 (W.D. Tex. Jan. 26, 2024) (the "Amazon Case"); *VirtaMove, Corp. v. Google LLC*, No. 7:24-cv-00033 (W.D. Tex. Jan. 31, 2024) (the "Google Case"); *VirtaMove, Corp. v. Hewlett Packard Enterprise Co.*, No. 2:24-cv-00093 (E.D. Tex. Feb.

---

[1] Unless indicated otherwise, "Ex." is to the Declaration of Diana Rutowski ("Rutowski Decl.").

9, 2024) (the "HPE Case"); *VirtaMove, Corp. v. Int'l Bus. Machs. Corp.*, No. 2:24-cv-00064 (E.D. Tex. Jan. 31, 2024) (the "IBM Case"); *VirtaMove Corp. v. Microsoft Corp.*, No. 7:24-cv-00338 (W.D. Tex. Dec. 20, 2024) (the "Microsoft Case").

### B.    Amazon And Google's Transfer Motions To NDCA Were Granted

Amazon and Google filed motions to transfer to NDCA in June and July 2024, respectively. Exs. 3-4.  Magistrate Judge Gilliland granted those motions in January 2025.  Exs. 5-6.  He stayed the transfer orders after VirtaMove filed objections, but the orders will go into effect on May 23, 2025, absent a contrary ruling from the Court.  Exs. 7-8.

### C.    Relevant Evidence And Witnesses Are Concentrated In NDCA

Though VirtaMove claims to be "an innovator and pioneer in containerization" (FAC ¶ 3), it did not invent containers.  Relevant third-party evidence and witnesses are located in NDCA.

#### 1.    Kubernetes Evidence and Witnesses Are in NDCA

Kubernetes is an open-source platform that allows users to deploy and manage containerized applications.  The development of the underlying technology occurred in NDCA. The concept behind the accused container orchestration in Kubernetes originated at Google— which is headquartered in Mountain View, CA—through its "Borg" Project.  *See* Ex. 4 at 5 (citing GKE Decl., ¶ 9), Ex. 65. The principal engineers for that project were all located in NDCA.  Ex. 4 at 5.  Google donated the technology to CNCF, which manages Kubernetes, providing hosting and support, governance, community engagement, and training services, although the product itself remains open source.  Exs. 9, 13.  CNCF is a sub-foundation of the Linux Foundation, both with their principal place of business in NDCA. Ex. 10 ¶ 13; Exs. 11-12.  Bay Area-based Google, Red Hat, and VMware Inc. are the top three contributors to Kubernetes.  Ex. 14.

#### 2.    Docker Evidence and Witnesses Are in NDCA

The accused Docker functionality used to develop and run applications in containers is

from Docker, Inc., headquartered in NDCA. Exs. 10, 16-17. Docker engineers developed Docker software in NDCA, and Docker's documents relating to its research, design, and development are in NDCA. *See* Ex. 18, *Intell. Ventures I LLC v. Hewlett Packard Enter. Co.*, No. 6:21-cv-0226-ADA, ECF No. 49 at 7-8 ("Docker maintains relevant evidence in NDCA"). Witnesses with relevant knowledge of Docker software's development live in California, the majority in NDCA: co-founders Solomon Hykes (San Francisco) and Kamel Founadi (Palo Alto) (Exs. 20-22, 66); engineers Tonis Tiigi (San Francisco) and Derek McGowan (Sacramento) responsible for accused Docker functionalities (Ex. 23 ¶ 4, Exs. 24-26, 67); and former engineer Jessie Frazelle (San Francisco) (Ex. 27). Co-founder Sebastien Pahl is located in Seattle, WA. Ex. 28.

### 3.    Prior Art Evidence and Witnesses Are in NDCA

"Solaris" is a prior art system developed in NDCA by Sun, a company founded by Stanford University graduate students in 1982 and acquired by Oracle in 2010. Ex. 29 at 5-6. Headquartered at the time in Santa Clara, CA, Sun introduced "software containers" with version 9 of its Solaris operating system in 2002. *Id.* at 2-3; Ex. 19. In the next version of Solaris, version 10, Sun called its software containers "Zones," which was based on containerization technology developed at Sun for years prior, including the containers released as a part of Solaris version 9. Coopersmith Decl. ¶ 5. Sun included Zones as part of prior Solaris releases and filed provisional patent applications concerning Zones in 2003. Ex. 30. In 2004, Sun filed a non-provisional application that led to U.S. Patent No. 7,437,556, which issued in 2008. Ex. 31. That patent names six inventors: three in NDCA (Dr. Andrew Tucker, Daniel Price, and John Beck) and none in Texas. Exs. 32-34; Coopersmith Decl. ¶¶ 8-9. Dr. Tucker, followed by Mr. Price, were the lead engineers for Solaris Zones at the time. *Id.* ¶ 7. Solaris is also the subject of inequitable conduct defenses and counterclaims that other defendants raised in response to VirtaMove's claims. *See*

Ex. 35 ¶¶ 77-192; Ex. 15.[2] Specifically, HPE and IBM allege that in obtaining the asserted patents, the applicants made material misrepresentations and omissions concerning prior art Solaris Zones. *Id*. In response to a subpoena in that action, Oracle located and produced Solaris source code from servers in Santa Clara, CA. Coopersmith Decl. ¶ 11; Rutowski Decl. ¶ 3.

Evidence and witnesses relating to other prior art systems are also likely to be in NDCA, including: (1) "FreeBSD," developed at the University of California, Berkeley (Exs. 36-39); (2) a paper written by Brian Schmidt, in NDCA, who is also a named inventor on at least two patents in this space along with James Hanko, also in NDCA (Exs. 40-43); (3) "Zap," presented in a paper by researchers at Columbia University in 2002, two of them, Steven Osman (lead author) and Dinesh Subhraveti, now work in NDCA, none in Texas (Exs. 44-47); (4) "Thinstall," developed in NDCA by Jonathan Clark, who resides in NDCA, and acquired by VMware and Omnissa, both in NDCA (Exs. 48-49, 64); (5) "Virtuozzo," developed in NDCA (Exs. 50-51); and (6) "HP-UX," developed by HPE, with one of HPE's most knowledgeable witnesses in NDCA (Ex. 52 at 9).

### D.    VirtaMove Has No Connection To This District

VirtaMove, a Canadian company (FAC ¶ 2), does not have any apparent ties to WDTX. The FAC alleges that "its place of business" is in Ottawa, Ontario, Canada (*id*. ¶ 2). The FAC does not allege any current presence in the United States and no place of business, operation, or personnel in Texas. VirtaMove's board of directors has four members—one in Palo Alto, CA (NDCA), two in Canada, one in Massachusetts. Ex. 53. VirtaMove has five employees, all in Canada. Ex. 54 at 11. The Asserted Patents' named inventors reside in Canada and Iowa, and the prosecuting attorneys reside in Florida (Exs. 55-58), with no connection to this District.

### E.    The Key Oracle Employees Are In NDCA And Various Locations, Not Texas

---

[2] Oracle has not yet answered VirtaMove's FAC but anticipates pleading inequitable conduct allegations involving Solaris if and when the time comes for it to answer in this case.

The key experts and decision-makers at Oracle with responsibility for OKE and Containers products reside in NDCA and across the United States, but none in Texas. They are: (1) Aanand Krishnan (Redwood City, CA), VP of Product at Oracle who oversees the team responsible for building products and services that power OCI, including Containers and Kubernetes (Krishnan Decl. ¶¶ 1-7); (2) Mickey Boxell (intending to move back to California from Chicago, IL this year), Product Manager for OKE responsible for activities pertaining to Oracle products that use OCI and OKE (*id.* ¶ 8); (3) Chinmay Borkar (Seattle, WA), Senior Director of Product Management and Mr. Boxell's manager with years of Kubernetes experience (*id.* ¶ 9); (3) Mike Sells (Broomfield, CO), Senior Director of Software Development for OCI and OKE/Containers (*id.* ¶ 12); (4) Jeff Hoffman (Minneapolis, MN), VP of Engineering for Containers, with decades of Kubernetes experience (*id.* ¶ 13); (5) Matt Strong (Miami, FL), Director of Software Engineering managing Oracle's Container Orchestration Service, part of OCI (*id.* ¶ 10); and (6) Daniel Berg (Raleigh, NC), OCI Architect with over a decade of Kubernetes and containerization experience and an in-depth understanding of OCI, OKE, and containerization technology (*id.* ¶ 11). These individuals are knowledgeable about the accused functionality and are likely to serve as witnesses in this case. For each, NDCA is accessible by direct flights, and Oracle has offices in the Bay Area where traveling witnesses could work during trial.

In contrast, although Oracle is now headquartered in Austin, none of the key experts and decision-makers with respect to the accused technology are in Texas. Krishnan Decl. ¶ 7.

## III.  <u>LEGAL STANDARD</u>

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The court should grant transfer when a movant demonstrates that the transferee venue is clearly more convenient. *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023) (citing

*In re Planned Parenthood Fed'n. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022), and *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*")).

Courts evaluating transfer motions under Section 1404(a) weigh four private interest factors and four public interest factors. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316 (Fed. Cir. 2021). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order; (3) the relative convenience of the two forums for potential witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* at 1316-17. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having disputes regarding activities occurring principally within a particular district decided in that forum; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* at 1317. These factors also apply to transfers between divisions of the same district. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (citations omitted).

## IV.    <u>THIS CASE SHOULD BE TRANSFERRED TO NDCA</u>

The balance of the private and public factors tips strongly in favor of transfer.

### A.    **VirtaMove Could Have Brought This Action In NDCA**

As a preliminary matter, venue is proper in NDCA. A patent infringement suit "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). At the time VirtaMove filed its complaint, Oracle had a regular and established place of business in NDCA and sold the allegedly infringing products in NDCA. Krishnan Decl. ¶ 15.

### B.    **The Private Interest Factors Favor Transfer To NDCA**

The availability of subpoena power to secure unwilling witnesses, relative ease of access to sources of proof, and judicial economy strongly favor transfer to NDCA. The cost for willing witnesses favors transfer or, at worst, is neutral. On balance, the factors favor transfer to NDCA.

### 1.    The Availability of Compulsory Process Strongly Favors Transfer

This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014). The Federal Rules permit a court to subpoena a witness to attend trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "within the state where the person resides, is employed, or regularly transacts business in person if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

VirtaMove accuses functionality of Kubernetes and Docker, both of which have extensive ties to NDCA. *See supra* §II.C. Testimony from third-party witnesses with knowledge of the Kubernetes and Docker platforms will be critical, and these witnesses most certainly will provide "relevant and material information." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (reversing denial of transfer where "vast majority of witnesses to be analyzed under this factor would be subject to the compulsory process" in transferee forum).

Regarding prior art, third-party engineers involved in Sun's development of Solaris in the early 2000s are subject to NDCA's subpoena power. *See supra* §II.C.3. The named inventors on Sun's prior art patent—three of whom reside in NDCA—have knowledge about the development of their prior art invention, an important consideration in establishing the technology as prior art under § 102(g). *See supra* §II.C.3; *Invitrogen Corp. v. Clontec Lab'ys, Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005) (explaining showing required for § 102(g)). Additional witnesses with knowledge of other prior art systems are also subject to NDCA's subpoena power. *See supra* §II.C.3.

Courts in NDCA can compel attendance at trial of all these relevant witnesses. Though Oracle does not yet know how many of these third-party witnesses will be unwilling to testify, the sheer number suggests that at least some will decline to do so voluntarily.  In any event, any present uncertainty concerning the need for compulsory process "does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California." *In re Juniper Networks*, 14 F.4th at 1321.  "[T]he movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue," favoring transfer.  *In re Hulu*, 2021 WL 3278194, at *4.

In contrast, there are no relevant third-party witnesses of which Oracle is currently aware located in this District. This factor plainly favors transfer. *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *6-7 (E.D. Tex. Dec. 22, 2017) (transfer favored where "multiple third-party witnesses resid[ed] within the [NDCA]" and no "third-party witnesses resid[ed] within the [EDTX] with information 'material or relevant' to the case").

### 2.     Relative Ease of Access to Sources of Proof Favors Transfer.

In patent infringement cases, courts look at "the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-0447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017) (*citing In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Here, the accused Docker and Kubernetes technology was researched, designed, developed, and tested by third parties in NDCA, *see supra*, §§II.C.1 and II.C.2, which "tips the scales in favor of transfer." *Koss Corp. v. Plantronics, Inc.*, No. 6:20-cv-663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021).  Moreover, there are relevant Oracle custodians and relevant documents accessible in its NDCA offices, such as Solaris code.  *See, e.g., In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) ("the location of document custodians and location where documents are created and

maintained . . . may bear on the ease of retrieval").[3]   In contrast, Oracle has not identified any unique sources of proof in WDTX, and VirtaMove has no presence in Texas. *See supra* §II.E.  This factor favors transfer.

### 3.    Judicial Economy Strongly Favors Transfer

The factor concerning "practical problems" focuses largely on considerations of judicial economy. *PersonalWeb Techs., LLC v. NEC Corp. of Am.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013) ("Practical problems include those that are rationally based on judicial economy").  Particularly relevant here, "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Id*.  Transfer is appropriate to keep related cases together when the two actions "involve patents relating to the same technology, will require similar discovery from overlapping witnesses, and involve substantially similar issues," even if "not precisely the same issues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 768 (E.D. Tex. 2009); *see also Texas v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 WL 2043184, at *6 (E.D. Tex. May 20, 2021) (collecting cases finding that judicial economy favors transfer where duplicative suits involve substantially similar issues).

Judicial economy strongly favors transfer here because the pending Amazon and Google cases in which VirtaMove is asserting *identical* patents against similar use of accused Kubernetes and Docker functionality were ordered transferred to NDCA.  Exs. 5-6.  VirtaMove's contentions as to each Defendant's accused products involve overlapping technology, such that factual issues associated with infringement will require a court to develop an in-depth understanding of technology that is common across each co-pending case. *See supra* §II.C.

---

[3] The Fifth Circuit's holding in *In re Planned Parenthood* merely instructs courts that physical evidence bears more strongly on the analysis of this factor—not that courts should automatically deem this factor neutral when evidence is electronic.  52 F.4th at 630.  The considerations Oracle raises here are probative of this factor notwithstanding the electronic nature of the evidence.

This Court's reasoning in *Open Text Corp. v. Alfresco Software, Ltd.,* No. 6:20-CV-00928-ADA, ECF No. 149, at 14 (W.D. Tex. Nov. 22, 2021), compels transfer here. Ex. 59. In *Open Text*, the Court ordered the case transferred even though the "cost of attendance for willing witnesses" factor was neutral because judicial economy strongly favored transfer. *Id.* at 19. The Court reasoned that there was a "significant degree of overlap" between co-pending cases that involved some, but not all, of the same patents and similar technology, noting the "danger of inconsistent rulings" on the shared patents. *Id.* at 14. This factor strongly favors transfer.

### 4.    Cost of Attendance for Willing Witnesses Favors Transfer

When there are relevant witnesses in the transferee forum but none in the transferor forum, as here, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). This is consistent with the Fifth Circuit's application of the "100-mile rule"[4] in *TikTok*, where the Fifth Circuit found that "the court erred by comparing Texas with California when it should have been comparing the Western District of Texas with the Northern District of California." *In re TikTok*, 85 F.4th at 359. The individuals at Oracle identified as likely witnesses either reside in NDCA (not Texas) or are scattered across the United States (and, thus, not impactful under this factor). *See supra* §II.E. This factor favors transfer.

Moreover, following *Tik Tok*, district courts in the Fifth Circuit have not applied the 100-mile rule rigidly where willing witnesses would have to travel a significant distance regardless of the venue, in light of Federal Circuit precedent. *See, e.g.*, *ICharts LLC v. Tableau Software, LLC*, No. 1:23-CV-01225-DII, 2024 WL 2305214, at *11 (W.D. Tex. May 21, 2024) (citing *In re Apple*,

---

[4] When the distance between venues is more than 100 miles, "the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) (citation omitted).

979 F.3d 1332, 1342 (Fed. Cir. 2020)); *see also* Ex. 60, *Red Rock Analytics, LLC v. Apple Inc.*, No. 6:21-cv-00346-ADA, ECF No. 172 (W.D. Tex. Mar. 4, 2025) at 5-6, 10 (applying Federal Circuit precedent in lieu of the 100-mile rule when analyzing, for example, Red Rock's witnesses outside the relevant forums). Consistent with this, courts also consider, for example, the existence (or lack thereof) of direct flights to and from each venue. *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 776 (E.D. Tex. 2014) (citation omitted). Notwithstanding the decentralized nature of Oracle's OCI/OKE witnesses, NDCA is a more convenient forum than Midland-Odessa because there are more direct flights to NDCA and witnesses would incur less travel expense and time. By contrast, there are no direct flights from many cities to Midland-Odessa, and travel time to Midland-Odessa would likely exceed that to NDCA even for some individuals who live geographically closer to this Division. Exs. 68-70. For example, there are no direct flights from Minneapolis (Mr. Hoffman's location) to Midland-Odessa—average travel time with connections is approximately seven hours, and the cheapest option is approximately $220. Ex. 61. However, direct flights from Minneapolis to San Francisco are around four hours in duration, and tickets are available for under $200. Ex. 62. Further, Oracle has offices in the Bay Area where traveling witnesses could work during trial, limiting disruption to their jobs as compared with this Division.

This factor favors transfer—at worst, the decentralized nature of Oracle's witnesses with respect to OCI and OKE (no key witnesses identified in Texas) renders the factor neutral.

## C. The Public Interest Factors, On Balance, Favor Transfer To NDCA

NDCA's interest in having its localized interests decided at home favors transfer, which tips the balance in favor of transfer to NDCA even if the other public interest factors are neutral.

### 1. The Localized Interests of NDCA Favors Transfer

"This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events

that gave rise to a suit.'" *In re Apple*, 979 F.3d at 1344-45. In patent infringement cases, courts generally focus on where the events forming the basis of infringement occurred. *Id.* This factor addresses "the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (emphasis in original).

The third-party technology accused in this case has strong connections to NDCA, and therefore the events giving rise to the suit occurred largely in NDCA. Docker and Kubernetes, accused in Oracle's products, were "researched, designed, and developed" in Northern California. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021); *see supra* §§II.C.1 and II.C.2 (describing Docker and Kubernetes' connections to NDCA). Moreover, development of containerization technologies, including numerous relevant prior art systems, occurred in NDCA. *See supra* §II.C.3. Importantly, Sun's development of Solaris occurred entirely in NDCA. *See supra* §II.C.3. As such, non-party individuals residing in or near NDCA have a significant interest in the adjudication of the case because it "calls into question [their] work and reputation." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

The interests of this District, by contrast, are fewer than NDCA. VirtaMove is a Canadian company with no relevant ties to Texas. And although Oracle is headquartered in Austin, "'what is required is significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple*, 979 F.3d at 1344 (citation omitted). Sales in this District are not enough. *Samsung*, 2 F.4th at 1380; *see also In re Hoffmann-La Roche*, 587 F.3d at 1338 ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *In re TOA Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013).

This factor strongly favors transfer.

### 2.    The Remaining Factors Are Neutral

As a general matter, the administrative difficulties flowing from court congestion concerns

"whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The Fifth Circuit has acknowledged that statistics such as "time to trial" are often not of particular relevance because "as a general matter, 'the district court is better placed' to evaluate its 'docket efficiency.'" *In re Clarke*, 94 F.4th at 510 (citations omitted). Bearing the Court's ability to evaluate its own docket in mind, Oracle respectfully submits that this factor is neutral. Familiarity with the law and avoidance of problems of conflict of laws or application of foreign law are also neutral. Both NDCA and WDTX are familiar with patent law and Oracle does not anticipate any conflicts of law in this case.

## V.   ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO AUSTIN

In the event the Court declines transfer to NDCA, Oracle respectfully requests that the Court transfer the case to the Austin Division of WDTX. This case could have been brought in Austin, where Oracle is headquartered, and Austin is more convenient than Midland-Odessa.

### A.   The Private Interest Factors, on Balance, Favor Transfer To Austin

#### 1.   Relative Ease of Access to Sources of Proof Favors Transfer

Oracle has offices in Austin, but not Midland-Odessa. Oracle's source code and documents related to OCI and OKE are hosted in the cloud and accessible from Oracle offices. Compared to Midland-Odessa, Austin is clearly more convenient under this factor because Oracle's employees can access documents from Oracle's office in Austin. *See, e.g., VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *3 (W.D. Tex. Oct. 7, 2019) (granting transfer in part because Defendant Intel "has a campus in Austin, but not in Waco, [making] it [] easier to access Intel's electronic documents from Austin than from Waco").

#### 2.   Cost of Attendance for Willing Witnesses Favors Transfer

Compared to Midland-Odessa, Austin is significantly easier for witnesses from all over the country to attend trial. Many airlines offer nonstop flights from cites where Oracle has identified

relevant witnesses into Austin, but not to Midland-Odessa. *See supra* §IV.B.4; *compare* Ex. 61, *with* Ex. 62. Additionally, because Oracle has an office in Austin, traveling Oracle employees could work and perform job-related activities during trial at Oracle's Austin office, limiting the disruption to their jobs. *See Smarter Agent, LLC v. Redfin Corp.*, No. 6:21-cv-01172-ADA, 2022 WL 2835861, at *6 (W.D. Tex. July 20, 2022) (traveling employees could work out of office in transferee venue).

### 3.    Availability of Compulsory Process Is Neutral

Most, if not all, of the witnesses that have been identified reside outside of the subpoena power of both WDTX Courts, rendering this factor neutral as to Austin (but favoring NDCA).

### 4.    Judicial Economy Favors Transfer

Because the Microsoft Case has been transferred to the Austin Division, considerations of judicial economy favor transfer to the Austin Division. Ex. 63.

### B.    The Public Interest Factors, On Balance, Favor Transfer To Austin

Austin's interest in adjudicating a case with a party headquartered in Austin is at least a generalized local interest, and the remaining factors are neutral, weighing in favor of transfer.

### 1.    Austin's Local Interest Favors Transfer

To the extent there is *any* local interest in the state of Texas, it lies in the Austin Division, not Midland-Odessa, because Oracle is headquartered in Austin.

### 2.    All Other Public Interest Factors Are Neutral

Familiarity of the forum with the law that will govern the case, avoidance of unnecessary problems of conflict of laws or of the application of foreign law, and administrative difficulties flowing from court congestion are all neutral for the same reasons discussed above.

## VI.    <u>CONCLUSION</u>

Oracle respectfully requests transfer to NDCA or, in the alternative, to the Austin Division.

Dated: April 25, 2025

Respectfully submitted,

*/s/ Jared Bobrow*

Jared Bobrow (admitted *pro hac vice*)
CA Bar No. 133712
jbobrow@orrick.com
Bas de Blank (admitted *pro hac vice*)
CA Bar No. 191487
basdeblank@orrick.com
Diana Rutowski (admitted *pro hac vice*)
CA Bar No. 233878
drutowski@orrick.com
**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA  94025
Tel: (650) 614-7400
Fax: (650) 614-7401

Darryl J. Adams
**Slayden Grubert Beard**
401 Congress Avenue, Suite 1650
Austin, Texas 78701
Tel:  512-402-3550

*Attorneys for Defendant Oracle Corp.*

### CERTIFICATE OF CONFERENCE

In accordance with Local Rule CV-7(g), counsel for Defendant Oracle conferred in a good faith attempt to resolve the matter by agreement. The parties did not reach an agreement because VirtaMove opposes the motion.

*/s/ Jared Bobrow*
Jared Bobrow

### CERTIFICATE OF SERVICE

The undersigned certifies that on April 25, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

*/s/ Jared Bobrow*
Jared Bobrow
