# EXHIBIT 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **INTELLECTUAL VENTURES I LLC** and **INTELLECTUAL VENTURES II LLC,**<br><br>        **Plaintiffs,**<br><br>    *v.*<br><br>**HEWLETT PACKARD ENTERPRISE CO.,**<br>        **Defendant.** | **6:21-cv-0226-ADA** |

**ORDER GRANTING DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) [ECF No. 33]**

Came on for consideration this date is Defendant Hewlett Packard Enterprise Company's

("HPE's") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). ECF No. 33 (the "Motion").

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("IV") filed an opposition

on October 22, 2021, ECF No. 36, to which HPE filed a reply on November 5, 2021, ECF No. 38.

IV filed an unopposed motion for leave to file a sur-reply on November 12, 2021. ECF No. 41. On

November 24, 2021, HPE filed an unopposed motion to respond to the sur-reply. ECF No. 47.

After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court

**GRANTS** HPE's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

IV filed a complaint against HPE in this Court on March 9, 2021, alleging infringement of

seven patents generally directed to cloud computing and virtualization. *See* ECF No. 1. IV is

incorporated in Delaware and its principal place of business is in Bellevue, Washington. *Id.* ¶¶ 1–

2. HPE is incorporated in Delaware and, according to HPE, it is "in the process of moving its

headquarters from the Northern District of California ("NDCA") to Houston, Texas," a process

that will be complete in "the Spring of 2022." ECF No. 33 at 2. IV alleges that HPE is *currently* headquartered in Houston, Texas. HPE's 10-K for 2020 reported its location as Houston; its public website identified Houston as the location of its worldwide corporate headquarters; its CEO issues HPE's fiscal reports and press releases from Houston; and HPE employs around 2,600 Houston-based personnel. ECF No. 36 at 1–2. The Court is satisfied that Houston is the location of HPE's headquarters. HPE also maintains corporate offices in Austin and Plano.

HPE alleges that:

- Count I of the Complaint accuses products integrated with Docker, a software platform developed by the Palo Alto-based Docker, Inc. ECF No. 33 at 3.

- Count II accuses products integrating Kubernetes open-source software developed by Google, located in Mountain View, California, and maintained by Cloud Native Computing Foundation ("CNCF"), based in San Francisco. *Id.* at 4.

- Count III and IV accuses products including HPE 3PAR StoreServ products and 3PAR technology was originally developed by the Fremont, California-based 3PAR, which was later acquired by HPE's predecessor and former 3PAR personnel continue to work for HPE. *Id.* at 4.

- Count V accuses products implementing Unity EdgeConnect products developed by Silver Peak Systems, Inc., which is now part of HPE's Aruba subsidiary based in San Jose, California. *Id.* at 4–5. HPE's human resources records show that the majority of former Silver Peak personnel who joined HPE continue to live and work in NDCA, while some live and work in Houston and Austin. *Id.* at 5.

- Count VI accuses features developed (by HPE personnel, the Court assumes) in Santa Clara, California. *Id.*

- Count VII accuses Wi-Fi 6 features and Broadcom and Qualcomm supply the relevant Wi-Fi chipsets; Broadcom and Qualcomm are headquartered in San Jose and San Diego, respectively. *Id.* Also located in the NDCA are (1) an HPE team that interfaces with the Qualcomm and Broadcom personnel to maintain the Wi-Fi chipsets and (2) HPE Aruba engineers that test those chipsets. *Id.* at 5–6.

On October 8, 2021, HPE filed its Motion to transfer venue to the NDCA under 28 U.S.C. § 1404(a), citing, among other facts, those above. ECF No. 33. The Court **GRANTS** that Motion.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the

3

cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation that existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant

need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III. ANALYSIS

### A.    Venue and Jurisdiction in the Transferor Forum

This Court finds, and IV does not contest, that this Action could have been brought in the NDCA. *See* ECF No. 33; ECF No. 36 at 5 n.1.

### B.    Private Interest Factors

#### 1.    Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340. In *Radmax*, the Fifth Circuit held that, though the distance between two divisions was slight, because all the documents and physical evidence were in the transferor division, this factor favored transfer. 720 F.3d at 288.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-

5

CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has recently held, however, that it is error not to consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021).

HPE asserts that, because the accused products and features were developed by either NDCA-based companies HPE acquired or NDCA-based third parties, the accused products and features are "primarily designed, developed and tested in NDCA." ECF No. 33 at 2, 9. It concludes, then, that the bulk of the relevant evidence is concentrated in NDCA. *Id.* at 9.

IV responds that HPE has not alleged that "the relevant documents are located in, or only in, the NDCA." ECF No. 36 at 6. "[T] the extent any documents are not already there, HPE will have no problem downloading documents at its offices . . . in Austin and at its new headquarters in Houston, Texas." *Id.* It further alleges that HPE maintains two data centers in this district, *id.* at 7—a contention HPE denies, stating that it either sold the land IV on which IV alleges the data centers or built, or the land simply has no improvement thereupon, ECF No. 38 at 2. IV retorts that HPE has claimed, for tax purposes, that it has two "Hewlett Packard Data Center[s]" in Austin. ECF No. 41-2 at 2. Moreover, to the extent HPE sold one of its data centers to an entity called "DXC," IV alleges that "HPE and DCX operate essentially as the same company." *Id.* at 3. HPE does not agree with this characterization. ECF No. 47-1 at 1–2.[1] IV argues that it is "likely" that the "Relevant HPE documents are stored on servers outside the NDCA, and likely on servers in" the disputed Austin data center(s). ECF No. 36 at 7.

---

[1] The Court opines on this dispute *infra* at Section III.B.3.

IV further alleges that "Docker has potential witnesses located in this District that will have Docker documentation." *Id.* And because Google and Broadcom maintain offices within this District, they are, according to IV, subject to a subpoena in this District. *Id.* IV alleges that HPE has at least nine customers in this District and elsewhere in Texas at which relevant documents are likely to be located. *Id.* And IV also argues that, because Broadcom and Qualcomm Wi-Fi chips are it issue, the Wi-Fi Alliance running the Wi-Fi standard will have relevant evidence. *Id.* at 11.

This factor favors transfer for the following reasons.

*Electronic Documents.* As an initial matter, this factor is not neutral, as IV would have this Court believe, merely because relevant documents are most likely stored electronically and thus, could be easily accessed from this District (or any district). The Fifth Circuit and the Federal Circuit have rejected this argument time and again, reaffirming that it is *relative* ease of access that matters, not absolute ease of access. *Volkswagen II*, 545 F.3d at 316; *In re Dish*, 2021 U.S. App. LEXIS 31759, at *6. And while the location of the servers storing the relevant documents is owed weight under this factor, the parties did not establish the location of such servers. IV argues that Austin-based servers "likely" maintain relevant evidence, but it fails to support this contention with any evidence. *See* ECF No. 36 at 7. The Court will not credit IV's attorney argument.

*Docker.* The Court is satisfied that Docker maintains relevant evidence in NDCA. Though Docker is now a fully remote company, ECF No. 36 at 9, IV has not rebutted HPE's evidence that Docker was (and technically still is) headquartered in Palo Alto, despite going fully remote, ECF No. 33 at 3. IV has not argued that Docker ever maintained office space outside of NDCA. The Court finds, then, that, if Docker maintains relevant documentation anywhere (and if Docker developed the relevant technology anywhere), it is almost certainly at or near Palo Alto. IV argues that Docker has potential witnesses in this District that may possess relevant documents, ECF No.

36 at 9–10; the Court will reserve consideration of these isolated witnesses under the next private-interest factor.

*Google*. The Court accords little to no weight to the parties' general allegations as to Google. While Google is headquartered in California and developed Kubernetes—the technology relevant to Count II—HPE did not submit evidence that Google developed Kubernetes in California. It is well established that Google is a global company; the Court is reticent to presume that, because it is headquartered in California, Google develops all its technology and stores all relevant information in California. But it is not unreasonable to presume that Google's headquarters holds some documentation relevant to Kubernetes. As to the specific Texas-based Google personnel IV has named as having experience with Kubernetes, the Court will not weigh those isolated employees under this factor.

*Cloud Native Computing Foundation*: The Court will also presume that the San Francisco-based CNCF, which maintains Kubernetes, possesses relevant documents in California at least because IV has not shown that CNCF maintains offices anywhere *but* NDCA.

*Broadcom & Qualcomm*: The Court will also presume that Broadcom and Qualcomm maintain relevant documents in California. HPE provided a declaration alleging that HPE personnel interact with California-based Broadcom and Qualcomm employees to ensure the Broadcom and Qualcomm Wi-Fi chipsets work with the accused HPE products. ECF No. 33-1 ¶ 9. It is only fair to presume, then, that California—where Broadcom and Qualcomm are headquartered—is also where Broadcom and Qualcomm maintain relevant documents. The Court will not conclude, however, that Broadcom's offices in this District maintain relevant documents, *see* ECF No. 36 at 7, without some evidence that those offices have any connection to the accused technology.

*3PAR*: The Court will not presume the location of relevant 3PAR evidence. Though 3PAR was headquartered in Fremont in 2010 before being acquired by HPE, ECF No. 33 at 4, it is unclear where documents relevant to the development and maintenance of 3PAR products are stored a decade hence. HPE is uniquely capable of identifying the location of relevant 3PAR evidence, but only provided a three-page spreadsheet at Exhibit N that purportedly identifies "former 3PAR employees" and "3PAR employees now work[ing] for HPE." ECF No. 33 at 4; ECF No. 34-2. That spreadsheet does not identify any employee by name, HPE provided no guidance on how to interpret that spreadsheet, and HPE's declaration listing the Motion's exhibits does not identify or describe Exhibit N. This frustrates the Court's analysis. To the extent the spreadsheet identifies personnel working on 3PAR technology, employees are not just concentrated in California, but also in Colorado and "Teleworker/Offsite." The Court is, therefore, not persuaded that relevant 3PAR documents are likely located in California. (Even if the Court credited California as the location of evidence relevant to 3PAR technology, it does not affect the outcome as to this factor.)

*Silver Peak:* The Court finds that relevant Silver Peak documents are maintained in NDCA. HPE acquired Silver Peak in September 2020 and absorbed it into HPE's Aruba subsidiary. ECF No. 33 at 4. Exhibit O attached to HPE's Motion, which purports to identify HPE employees related to Silver Peak technology, suffers from the same issues as Exhibit N—but to the extent it identifies relevant Silver Peak personnel, almost all of those employees work in San Jose, where Aruba is headquartered. *Id.*; ECF No. 34-3. The Court is therefore persuaded that documents related to Silver Peak are likely maintained in the San Jose headquarters of the company that absorbed Silver Peak and some of its personnel.

*HPE/Aruba*: The Court finds that documents related to Counts VI and VII are located in California because HPE provided a declaration stating that HPE/Aruba personnel in San Jose and

Sunnyvale perform testing on Aruba wireless access points, ECF No. 33-1 ¶¶ 11, 12, and an HPE/Aruba team ensures that Broadcom and Qualcomm Wi-Fi chipsets work with Aruba wireless access points, *id.* ¶ 9. Moreover, HPE performs its Wi-Fi Alliance certification testing in the NDCA. ECF No. 38 at 4. The Court refuses to credit HPE's representation that "ARM and AirMatch were developed in Santa Clara, California," ECF No. 33-1 ¶ 6, absent information like who developed that technology and where are those developers now. Finally, given the scope of the products and features accused here, the Court finds it unlikely that HPE's headquarters in Texas holds *no* relevant documentation.

*HPE Customers*: The Court finds that HPE customers, ECF No. 36 at 8, likely have relevant documents. The Court does not doubt, however, that HPE has "customers all across the country, including the NDCA," ECF No. 38 at 3; thus, it will accord little weight, if any, to the location of documents maintained by customers where the accused infringer's customer-base spans the country.

*Wi-Fi Alliance*: The Court finds that the Wi-Fi Alliance in Austin may have relevant evidence because IV has limited the accused products with specific reference to Wi-Fi 6 compliance. *Cf. In re Apple Inc.*, 818 F. App'x 1001, 1004 (Fed. Cir. 2020) ("The court fairly could find that a test or certification that the Wi-Fi Alliance has in its possession concerning whether the products comply or are interoperable with the 802.11ac standard could be relevant even if, as Apple contends, some of the features targeted by the patents are considered optional under the standard.").

In conclusion, the Court is satisfied that Docker, CNCF, Broadcom, Qualcomm, and HPE/Aruba maintain evidence relevant to this Action in California. Likewise, HPE's headquarters in Houston likely maintains at least some relevant evidence. In addition, the Wi-Fi Alliance likely

maintains relevant evidence on Wi-Fi 6 compliance in Austin, Texas. Though Texas-based HPE customers likely maintain relevant documents in Texas, the Court accords that fact little to no weight. In sum, there are more source of proof in California than Texas and therefore this factor favors transfer.

### 2. Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness.").

Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

HPE argues that this factor favors transfer because unnamed California-based personnel from Docker, Inc., Google, CNCF, Broadcom, and Qualcomm are potential witnesses whose attendance the NDCA can compel. ECF No. 33 at 10. HPE further argues that six of the named inventors are located in the NDCA, while only three are located in this District. *Id.* at 11.

IV argues under this factor that HPE has "hundreds, if not thousands of potential witnesses working at its corporate offices in Austin." ECF No. 36 at 7. Further, there are 25-30 former HPE employees residing in Austin. *Id.* at 8 n.8. It also asserts that personnel at Texas-based HPE customers have knowledge relevant to infringement and can be compelled to testify. *Id.* at 7. IV chides HPE for not identifying any Broadcom, Qualcomm, Aruba, CNCF potential witnesses by name. *Id.* at 8–10. IV further argues that Qualcomm, Broadcom, and Aruba all maintain offices in Texas, meaning that witnesses there are subject to compulsory process here. *Id.* As to specific third-party personnel located in Texas, IV identifies four Docker employees, *id.* at 10; four Google employees, *id.*; three CNCF employees, *id.*; and four named inventors, *id.* at 11. IV also asserts that five named inventors are also located in New England or New York, which is nearer this District than the NDCA. *Id.*

The Court finds that this factor favors transfer. As an initial matter, the Court will not weigh party witnesses under this factor; the Court reserves consideration of HPE personnel for the next private-interested factor. The Court consider the convenience of all non-party personnel under this factor, with one exception. Aruba, though not party to this suit, is a wholly owned subsidiary of

HPE, ECF No. 33-1 ¶ 2, and so the Court will consider its witnesses to be willing. *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 1:10CV430, 2011 U.S. Dist. LEXIS 161300, at *13 (E.D. Tex. Mar. 30, 2011) ("Although KTC is not a party to this suit, it is a wholly-owned subsidiary of Kaneka . . . , and thus the court will consider KTC employees to be willing witnesses . . . ."). This treatment of Aruba is not inconsistent with how the parties have framed Aruba's activity and involvement with respect to this case.

The Court is satisfied that California-based personnel from Docker, Broadcom, Qualcomm, and CNCF are relevant under this factor and need not be identified with any specificity because the Court has, as determined above, already found that those entities have relevant evidence in California. *See In re Apple*, 2021 U.S. App. LEXIS 33788, at *8 ("[T]here [is] 'no basis to discount' third-party entities that the district court itself [has] recognized as having pertinent information in the transferee venue 'just because individual employees were not identified.'" (quoting *In re HP Inc.*, 826 F. App'x at 903).

Using the same logic, the convenience of unnamed Texas-based Wi-Fi Alliance personnel will also be considered. But the same cannot be said for the unnamed, Texas-based Qualcomm and Broadcom personnel—the Court will not count their convenience because IV did not establish under the previous factor that those companies maintained relevant evidence at their Texas offices. Moreover, IV has not provided any evidence, independent of the sources-of-proof factor, showing that these same unnamed Texas-based witnesses have knowledge relevant to the claims merely because they work for a relevant third-party. The same rationale applies to even the named Docker, ECF No. 36–16, and former HPE personnel; IV failed to articulate the relevance of these witnesses beyond their mere association to Docker and HPE. Additionally, the Court cannot accord any

weight to HPE's Texas-based customers either; it rejects their convenience on the same ground used to deny them weight under the previous factor.

Yet the convenience of specifically identified Google and CNCF employees is owed weight. The Court is satisfied that John Wood, William Beason, and Kevin Grigsby have knowledge relevant to Count II because their respective LinkedIn profiles highlight their experience and knowledge of Kubernetes. ECF No. 36 at 10; ECF No. 36-17. IV did not establish the same for Nolan Corcoran, whose profile does not allude to Kubernetes. *Id.* The Court is also satisfied that, based on their LinkedIn profiles, the specifically identified Texas-based CNCF employees, including CNCF's CTO whose profile mentions Kubernetes, possess knowledge relevant to Count II (at least to infringement, invalidity, or damages) and are subject to compulsory process in this District. ECF No. 36 at 9–10; ECF No. 36-18.

Finally, the Court finds that four named inventors of the asserted patents are located in Texas, six are located in California, and five are on the east coast—and neither party argued that any are willing or otherwise obligated to testify. *See* ECF No. 36 at 11. The five inventors on the east coast are not subject to compulsory process in this District or the NDCA and thus irrelevant. Accordingly, more named inventors are subject to the NDCA's subpoena power than this Court's subpoena power.

In summary, the NDCA can compel the testimony from: relevant, unnamed witnesses employed by Docker, Broadcom, Qualcomm, and CNCF; and six named inventors. This Court can compel testimony from: relevant, unnamed witnesses from the Wi-Fi Alliance; relevant, named witnesses from Google and CNCF; and four named inventors. Taken together, this factor slightly favors transfer to NDCA at least because the NDCA, compared to this District, can compel

testimony from two more named inventors and from relevant witnesses from one more corporate entity.

### 3. Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for

instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at \*13. Elsewhere it has stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

HPE argues that "HPE witnesses familiar with the design and development of the accused features are located in NDCA."[2] ECF No. 33 at 12. For example, "HPE human resources records show that a majority of the employees who joined HPE in the Silver Peak acquisition, including engineering, design, operations, sales, and marketing personnel, continue to live and work in NDCA." *Id.* at 4. (Though, as IV notes, 20 Silver Peak employees reside in Texas. ECF No. 36 at 9.) Further, an HPE team in NDCA "interacts with Broadcom and Qualcomm employees . . . to ensure their Wi-Fi chipsets work with the Aruba wireless access points." ECF No. 33 at 5. Aruba employees perform testing on Wi-Fi chipsets in California. *Id.* at 5–6. HPE/Aruba employees working on Silver Peak and 3PAR technology are allegedly concentrated in NDCA. *Id.* at 3–4. And, according to HPE, none of the accused products or features were developed in Texas and there are no "known witnesses" working in HPE's Texas offices. *Id.*

IV asserts that "HPE has hundreds, if not thousands of potential witnesses working at its corporate offices in Austin," including engineers of every stripe and legal, business, marketing, advertising, and sales personnel. ECF No. 36 at 7–8. Based on that, and HPE's headquarters in Houston, IV believes that "multiple witnesses with relevant knowledge are located at these

---

[2] HPE states that "ARM and AirMatch were developed in Santa Clara, California." ECF No. 33 at 5. HPE does not state who developed this technology, so the Court cannot categorize those developers as either willing or unwilling witnesses. The Court will not presume that HPE or Aruba developed this technology as HPE has represented that third parties developed so many other accused features. The Court will disregard arguments as to ARM and AirMatch under the witness categories for wont of specificity and evidence.

facilities in Austin and Houston." *Id.* at 13. IV notes how eight Texas-based HPE employees are working on 3PAR and twenty Texas-based HPE/Aruba employees are working on Silver Peak technology. *Id.* at 9. IV also alleges that HPE's Austin data centers use accused products, so HPE employees maintaining those data center(s) have relevant knowledge. *Id.* at 8. (HPE again avers that it does not own the identified data centers. ECF No. 38 at 3.)

The Court finds that this factor favors transfer. It is reasonable to presume that there are HPE witnesses in Texas given the breadth of the accused products and features and HPE's corporate footprint in Texas, including locating its headquarters in Texas. Yet the Court will not permit this conjecture to dominate the evidence HPE has provided. HPE's declarant stated that HPE/Aruba personnel possessing relevant knowledge are located in the NDCA. ECF No. 33-1. IV has not endeavored to match that level of proof, opting instead to speculate that, because HPE has an increasingly large presence in Texas, Texas-based HPE employees have relevant knowledge. In support of that contention, IV trawled LinkedIn for profiles of HPE employees in this district. IV did not annotate its list of HPE personnel with explanations for *why* each employee possesses knowledge relevant to the claims. The Court will not endorse IV's tactics here; analysis under the compulsory-process and willing-witnesses factors should not devolve into, and hinge on, a contest of who can mine the longer list of employees from LinkedIn, irrespective of their connection to the case. As stated above, the Court is comfortable presuming that relevant HPE witnesses reside in Texas based on HPE's established presence in Texas, though that presumption does not overcome the evidence of relevant California witnesses HPE presents.

On a similar note, even if the Court assumed that the twenty-eight Texas-based HPE/Aruba employees working on 3PAR and Silver Peak technology possess relevant knowledge merely because HPE identified them in exhibits presented without comment, ECF No. 36 at 9, the number

of California-based personnel in those spreadsheets dwarfs the number of Texas-based personnel, *see* ECF Nos. 34-2, 34-3.

Finally, as to the Austin-based data centers, IV has not shown that HPE owns or controls them. IV alleges that HPE operates data centers at 3301 and 3302 Hibbetts Road, Austin, Texas. *See* ECF No. 36 at 3; ECF Nos. 36-8. HPE responded with evidence that HPE sold the property at 3301 Hibbetts to DXC Technology Services, LLC in 2018, which then transferred it to SDC-Austin LLC earlier this year. *See* ECF No. 38 at 2; ECF No. 38-3. As to 3302 Hibbets, HPE presented evidence that there are no improvements, like a data center, on that property. *See* ECF No. 38 at 2; ECF No. 38-4; ECF No. 47-1 at 2; ECF No. 47-4. IV requests that the Court nevertheless consider the data center at 3301 Hibbetts as belonging to HPE because: (1) DXC's sale of that property to SDC-Austin occurred after IV filed the complaint in this case and "[v]enue is determined by the circumstances that existed as of the date the complaint was filed," ECF No. 41-2 at 3 n.4 (citing *Moler v. Wells*, --- F.4th ---, No. 20-30132, 2021 WL 5232386, at *2 n.7 (5th Cir. Nov. 10, 2021)); and (2) DXC and HPE should be treated as one entity. The Court declines at least because IV's first legal proposition is incorrect. While venue may be determined by the circumstances existing when the complaint was filed, this Motion is not one for improper venue, as in *Moler*. A court analyzing transfer under § 1404 must consider convenience as it is and will be, not as it was. *See, e.g.*, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 34 (1988) (Scalia, J., dissenting) ("[T]he courts in applying § 1404(a) have examined a variety of factors, each of which pertains to facts that currently exist or will exist . . . ."); *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2021 U.S. Dist. LEXIS 156331, at *5 (E.D. Tex. Apr. 19, 2021) ("[W]hether to transfer a case for convenience bears primarily on post-complaint matters."). The Court will not

attribute conduct or personnel at the 3301 Hibbetts data center to HPE and, accordingly, finds them irrelevant to this analysis.

> For the foregoing reasons, this factor favors transfer.

> 4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This factor weighs slightly in favor of maintaining this Action in this District. As IV notes, ECF No. 36 at 13–14, two of the patents-in-suit are U.S. Patent Nos. RE 44,818 ("the '818 patent")

and 6,818,464 ("the '464 patent). The Court previously conducted *Markman* hearings and issued claim constructions for both of these patents. *See Intellectual Ventures I LLC v. VMware, Inc.*, No. 1:19-cv-01075-ADA, ECF No. 103; *Intellectual Ventures II LLC v. VMware, Inc.*, No. 1-20-cv-00457-ADA, ECF No. 55. Because this Court has already familiarized itself with two of the asserted patents, this factor weighs slighting against transfer.

### C.    Public Interest Factors

#### 1.    <u>Court Congestion</u>

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

The Federal Circuit has also held that, in the event time-to-trial statistics favor one district over another, the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *In re Juniper Networks*, 14 F.4th at 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021).

The Federal Circuit has recently concluded that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 14 F.4th at 1322. Bound by this guidance, the Court finds that this factor is neutral.

### 2. Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

HPE argues that "the accused products and features were designed and developed primarily in NDCA, giving that district a greater local interest." ECF No. 33 at 14. It asserts that "because this suit 'calls into question the work and reputation of several individuals residing' in that district, NDCA's interest in this matter is 'self-evidence.'" *Id.* (quoting *Hoffman-La Roche,* 587 F.3d at 1336). In response, IV notes the location of HPE's headquarters in Houston and offices in Austin. ECF No. 36 at 15.

The Court finds that this factor slightly favors transfer. It is indisputable that HPE has a significant presence in Texas, including locating its headquarters here. But as the Federal Circuit has repeatedly admonished, courts must focus on "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d at 1345. Because HPE has presented evidence that many of the accused products and features were developed in the NDCA, the Court is satisfied that events giving rise to this Action occurred in or near the NDCA. Balancing California's specific interest and Texas's general interest, the Court finds that this factor slightly favors transfer.

### 3. Familiarity of the Forum with Law-At-Issue

The parties do not dispute that this factor is neutral and the Court agrees.

### 4. Conflict of Laws

The parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs slightly in favor of transfer |

| Cost of attendance for willing witnesses | Weighs in favor of transfer |
|---|---|
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs slightly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Weighs slightly in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three factors are neutral, only practical problems weighs against transfer, and the rest all at least slightly favor transfer. Given the foregoing, the Court finds that HPE has shown that NDCA is clearly more convenient than WDTX. HPE's Motion is therefore **GRANTED**. The Court **ORDERS** that the above captioned case is transferred to NDCA.

SIGNED this 30th day of November, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE