# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

VIRTAMOVE, CORP,

                Plaintiff,

           v.

ORACLE CORP.

                Defendant.

Case No. 7:24-CV-00339-ADA

## VIRTAMOVE'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.      Introduction ........................................................................................................1

II.     There Is No Justiciable Dispute Regarding the '058 Patent .....................................1

III.    Disputed Terms ..................................................................................................1

    A.    Oracle misapplies and distorts the patent specifications' explanations of claim
        terms ..............................................................................................................1

        1.    "container" ('814 patent, claims 1, 2, 6, 9, 10, 13) ...................................1

        2.    (Mooted) "shared library" ('058 patent, claims 1, 2) .................................6

    B.    There is no disclaimer or other basis to import unrelated prosecution statements
        into the claim scope. .........................................................................................8

        1.    (Mooted) "forms a part of the one or more of the plurality of software
            applications" ('058 patent, claim 1) ...................................................8

        2.    "each of the containers has a unique root file system that is different from an
            operating system's root file system" ('814 patent, claim 1) .......................9

    C.    Oracle's attacks on the validity of the '058 patent are both moot and incorrect 12

        1.    (Mooted) "critical system elements" ('058 patent, claim 1) .....................12

        2.    (Mooted) "functional replicas" ('058 patent, claim 1) ..............................15

IV.     CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014)................................................................................ 15

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017)................................................................................ 15

*Thorner v. Sony Computer Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012)............................................................................ 3, 11

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016).................................................................................. 7

*Union Paper-Bag Mach. Co. v. Murphy*,
  97 U.S. 120 (1877)................................................................................................... 17

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)................................................................................................... 17

## I.     Introduction

Oracle proposes several constructions impermissibly changing the patent scope from the plain and ordinary meaning set out by the applicant and issued by the U.S. Patent and Trademark Office. Oracle's selective, results-oriented proposals do not reflect either the intrinsic record or the law of claim construction. These constructions should be rejected for the reasons explained below.

Oracle also asks this Court to consider issues, including indefiniteness, regarding the '058 patent, which is no longer asserted in this action. As explained in the next section, the Court need not and should not address the '058 patent.

## II.     There Is No Justiciable Dispute Regarding the '058 Patent

In an effort to narrow the issues before the Court, VirtaMove has narrowed its election of asserted patents in this action to include only the '814 patent, and has dismissed its previous claims regarding the '058 patent. As a result, there is no justiciable controversy between the parties regarding the interpretation or validity of the '058 patent. Nevertheless, because Oracle has indicated by separate correspondence an intent to continue seeking construction of its proposed terms, VirtaMove presents short arguments below. VirtaMove believes Oracle's position lacks merit and that the Court need not and should not consider any issue related to the '058 patent.

## III.     Disputed Terms

### A.     Oracle misapplies and distorts the patent specifications' explanations of claim terms.

#### 1.     "container" ('814 patent, claims 1, 2, 6, 9, 10, 13)

| Oracle's Proposed Construction[1] | VirtaMove's Proposed Construction |
|---|---|
| An aggregate of files required to successfully execute a set of software applications on a computing platform. Each container for use on a server is mutually exclusive of the other | No construction necessary; plain and ordinary meaning. In the alternative: <br><br> An aggregate of files required to successfully execute a set of software applications on a |

---

[1] Emphasis indicates language not present in VirtaMove's proposed alternative construction.

| **Oracle's Proposed Construction[1]** | **VirtaMove's Proposed Construction** |
|---|---|
| containers, such that read/write files within a container cannot be shared with other containers. ***The term 'within a container', used within this specification, is to mean 'associated with a container'. A container comprises one or more application programs including one or more processes, and associated system files for use in executing the one or more processes; but containers do not comprise a kernel; each container has its own execution file associated therewith for starting one or more applications. In operation, each container utilizes a kernel resident on the server that is part of the operation system (OS) the container is running under to execute its applications.*** | computing platform. Each container for use on a server is mutually exclusive of the other containers, such that read/write files within a container cannot be shared with other containers. |

The '814 Patent specification includes a broad explanation of how a "container" fits within the context of the claimed invention. Although described as a "definition," in substance the patentee provided an encyclopedia entry, which does not evidence an intent to deviate from plain meaning, and which would serve only to confuse the jury by substituting a single word in a claim with nearly 100 words of redundant examples of how containers may be implemented.

Indeed, Oracle itself omits entire sentences from the supposed "definition" set forth in the specification, confirming that a POSITA would not understand the entirety of its discussion of "container" to be lexicography. Oracle specifically concedes that only "relevant" and "definitional" portions of the specification should be incorporated into the claim construction of the word "container." Br. at 5. Accordingly, Oracle omits the specification's statement that "[a] container is not a physical container but a grouping of associated files, which may be stored in a plurality of different locations that is to be accessible to, and for execution on, one or more servers." '814 patent at 2:25-29. The rest of the disputed portions of Oracle's construction are no more "relevant" or "definitional" than the "physical container" sentence.

Nor could Oracle have shown that the "exacting" standard for lexicography is met. "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). And "[t]he standard for disavowal of claim scope is similarly exacting. *Id.* The fact that high bar for lexicography is not met here is confirmed not only by the non-definitional nature of the specification's discussion of a "container," but also by the fact that this Court has now been presented with **three** different attempts by defendants to apply the alleged "lexicography" in completely different ways. The three defendants' primary proposals overlap only as to the two sentences that VirtaMove also proposes in the alternative:

| Oracle's Proposed Construction | Amazon's Proposed Construction[2] | Google's Proposed Construction[3] |
|---|---|---|
| An aggregate of files required to successfully execute a set of software applications on a computing platform. Each container for use on a server is mutually exclusive of the other containers, such that read/write files within a container cannot be shared with other containers. ***The term 'within a container', used within this specification, is to mean 'associated with a container'. A container comprises one or more application programs including one or more processes, and associated system files for use in executing the one or more processes; but containers do*** | An aggregate of files required to successfully execute a set of software applications on a computing platform is referred to as a container. Each container for use on a server is mutually exclusive of the other containers, such that read/write files within a container cannot be shared with other containers. ***A container comprises one or more application programs including one or more processes, and associated system files for use in executing the one or more processes; but containers do not comprise a kernel; each container has its own execution file associated*** | An aggregate of files required to successfully execute a set of software applications on a computing platform is referred to as a container. ***A container is not a physical container but a grouping of associated files, which may be stored in a plurality of different locations that is to be accessible to, and for execution on, one or more servers.*** Each container for use on a server is mutually exclusive of the other containers, such that read/write files within a container cannot be shared with other containers; or above and 2:32-42 |

[2] *VirtaMove Corp. vs. Amazon.com, Inc, et al.*, Case No. 7:24-cv-00030-DC-DTG, Dkt. No. 71 at 5-6 (W.D. Tex. Oct. 22, 2024).
[3] *VirtaMove Corp. vs. Google LLC*, Case No. 7:24-cv-00033-DC-DTG, Dkt. No. 63 at 8-10 (W.D. Tex. Oct. 22, 2024).

| Oracle's Proposed Construction | Amazon's Proposed Construction[2] | Google's Proposed Construction[3] |
|---|---|---|
| *not comprise a kernel; each container has its own execution file associated therewith for starting one or more applications. In operation, each container utilizes a kernel resident on the server that is part of the operation system (OS) the container is running under to execute its applications.* | *therewith for starting one or more applications.* | |

Oracle, unlike any other defendant, proposes to include the statement that "within a container" means "associated with a container." This is plainly not part of the definition of "container" because it does not define what a container *is*. Furthermore, inserting this language would not resolve any substantive dispute between the parties, and instead might invite an improperly broad interpretation of the few places where the phrase "within a container" appears in the claim language (even though Oracle has not proposed construction of "within a container"). Specifically, claim 1 already uses the word "associated" in a specific context, as part of the name of the "associated system files within a container" and the "associated *local* system files that remain resident on the server." The associated *local* system files are *not* within a container. This use of "associated" parallels the specification's separate description of "associated system files" that are part of the operating system. '814 patent at 6:61-63 ("Each operating system includes a kernel 12, hardware 13 in the form of a processor and a set of associated system files…"). As drafted, the claim language uses the word "associated" only in this sense.

Rewriting "within a container" as "associated with a container" could be misinterpreted as suggesting that any "associated system file," for example a system file within the operating system,

meets the claim limitation of an "associated system file[] *within a container*." This could be used to improperly read out the "within" limitation and should therefore be rejected.

The other phrases proposed by Oracle are redundant of existing claim language:

"*A container comprises one or more application programs including one or more processes, and associated system files for use in executing the one or more processes…*" This phrase is redundant with the remainder of Claim 1, which already recites "each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications." Of course application programs include a "process"— otherwise the program would be unable to *do* (or "process") anything. Oracle presents no plausible reason why this language would add anything meaningful beyond the express claim language itself.

"*[B]ut containers do not comprise a kernel…*" Claim 1 already recites "the containers of application software excluding a kernel."

"*In operation, each container utilizes a kernel resident on the server that is part of the operation system (OS) the container is running under to execute its applications.*" Claim 1 already recites " each server includes a processor and an *operating system including a kernel*" and "a plurality of secure containers of application software, each container comprising one or more of the executable applications and a set of associated system files required to execute the one or more applications, *for use with a local kernel residing permanently on one of the server*s." In context, the claim language is already clear that the container must rely on the local kernel on the server, excluding prior art embodiments in which each application requires its own operating system and kernel. *See* '814 patent at 1:56-61 (disparaging prior art where "an operating system, including files and a kernel, must be deployed for each application").

### 2.    (Mooted) "shared library" ('058 patent, claims 1, 2)

If the Court considers the dismissed '058 patent, it should reject Oracle's proposal. The term "shared library" appears throughout the specification and claims of the '058 Patent. It has a plain and ordinary meaning that is confirmed by the claim context and by the specification. Instead of recognizing this plain and ordinary meaning, Oracle demands including a confusing, circular "definition" that introduces additional terms unfamiliar to a jury and that, appears to contradict the claim context.

For example, the patent specification makes clear that "code space" refers to where a library is located, not to the library itself. *See, e.g.*, '058 Patent at 3:39-45 ("the same set of instructions in the same physical memory space, *that is, shared code space*…"); *id.* at 6:54-55 ("Static library: An application *whose* code space is *contained* in a single application"); *id.* at 7:3-5 ("[W]hat is commonly done is to provide an application library *in* shared code space, which multiple applications can access."). This usage, which reflects the plain and ordinary meaning of "code space" to a POSITA, contradicts the notion that a shared library is *defined* as "an application library code space" as Defendants request.

There is a simple explanation for the confusing construction, though: the patent applicant obviously introduced a pair of typographical errors into the definition of "Shared library." The original version of this definition, in the provisional application to which the '058 Patent claims priority, is shorter: "An application library *whose* code space *is* shared among all user mode applications." Provisional Patent Application No. 60/504,213 (Ex. 1) at 9. That definition cleanly flowed from the definition of "Application library" above it, and paralleled the definition of "Static library" below it, confirming that the key difference between a shared library and a static library is whether the code space is contained in a single application or shared among applications:

```
Application library:  A collection of functions in an archive
format that is combined with an application to export system
elements.

Shared library:  An application library whose code space is
shared among all user mode applications.

Static library:  An application library whose code space is
contained in a single application.
```

*Id.*

The '213 provisional application was expressly incorporated by reference into the '058 patent. '058 patent at 1:8-11. It thus forms part of the specification, at least for purposes of claim construction. *See Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1365–66 (Fed. Cir. 2016) (definition of "byte sequence feature" in provisional application supported construction of that term).

When the applicant revised the provisional specification to form the non-provisional application, additional detail was added to the definition, but the words "whose" and "is" were removed. Those words were not deleted from the definition of "Static library," which retains the same definition in the final specification. The new language includes "The code space is different than that occupied by the kernel," confirming that "code space" is a space occupied by code, not code itself. This confirms that the deletion of "whose" was unintentional, and that the correct interpretation should retain the original language of the provisional. A POSITA reading the specification would readily understand that this is the correct interpretation. Therefore, if the extent the Court believes construction is necessary, the correct definition without the typographical errors should be included: "An application library ***whose*** code space ***is*** shared among all user mode applications."

The longer definition in the specification does include two additional sentences not stated in the provisional definition. Oracle criticizes VirtaMove for "truncating" those sentences away, but without giving any explanation how they modify claim scope. The second sentence ("The code space is different than that occupied by the kernel and its associated files.") is redundant of the requirement, included in VirtaMove's proposal, that the code space "is shared among all user mode applications," not the kernel. This is also consistent with the express claim language "for use by the plurality of applications in user mode." VirtaMove does not believe that including or excluding this sentence substantively affects claim scope.

The third sentence unambiguously confirms VirtaMove's interpretation, stating: "The shared library files are placed in an address space that is accessible to multiple applications." This makes clear that a shared library is something placed in a "space," rather itself being a "space." Beyond that, the third sentence appears to impose a weaker version of the requirement, already reflected in the first sentence and in VirtaMove's proposal, that the shared library is located in a code space "shared among all user mode applications," not merely "multiple applications."

**B.      There is no disclaimer or other basis to import unrelated prosecution statements into the claim scope.**

**1.      (Mooted) "forms a part of the one or more of the plurality of software applications" ('058 patent, claim 1)**

If the Court considers the dismissed '058 patent, it should reject Oracle's proposal. The proposal adds meaningless limitations that are not relevant to any plausible dispute between the parties. The word "literally" is meaningless padding at best; there is no serious suggestion that "forms a part" and "literally forms a part" have different meanings. The exclusion of "a proxy that is exclusive of the application" is likewise surplusage. The plain language of the claim already prevents the SLCSE from being "exclusive of the application" by requiring that the SLCSE "forms a part of" the software applications. Furthermore, the proposed construction might be

misinterpreted to *broaden* the scope of the claim, suggesting that "resid[ing] in the same address space as application code" is both necessary and *sufficient* to satisfy "forms a part."

      2.      **"each of the containers has a unique root file system that is different from an operating system's root file system" ('814 patent, claim 1)**

| Oracle's Proposed Construction | VirtaMove's Proposed Construction |
|---|---|
| each container has a separate physical copy of the files required by applications associated with the container | No construction necessary; plain and ordinary meaning. |

Oracle's construction ignores the plain meaning of this limitation (which focuses on the distinction between a ***container's*** root file system and an ***operating system's*** root file system), and improperly shifts the focus to an unsupported distinction between ***one container's*** root file system and ***other containers'*** root file systems.

Oracle's construction clearly deviates from a POSITA's understanding in numerous respects, as it is both too narrow ***and*** too broad in different respects. It is too broad because it ignores the plain claim language requiring a distinction between the *containers'* **file systems** and the *operating system's* **file system**. Oracle's construction instead focuses on a distinction between the *containers'* **copy of the files** and *other containers'* **copy of the files**.[4] For instance, Oracle's construction imposes no requirements on any "root file system," much less the relationship between a container's root file system and an ***operating system's*** root file system. In this respect, Oracle's construction ignores claim requirements.

Oracle's construction is likewise too narrow because it imposes requirements that are not present in the claim limitation. As noted above, Oracle's construction imposes requirements on what a container's **copy of the files** must be (allegedly, a "physical copy of the files"), whereas

---

[4] Oracle also inexplicably ignores the fact that "system files" are not synonymous with "the files required by applications."

the claim language to be construed does not describe any copy of the files, but rather the nature of the "root file system" in which files may be stored. Likewise, Oracle's construction imposes a relationship between **one container** and **other containers**, whereas the claim language unambiguously draws a distinction between **containers** and the **operating system**. Indeed, the concept of an "operating system" is found nowhere in Oracle's proposed construction (much less the concept of an "operating system's root file system").

Oracle's arrives at its misguided construction through a misreading of the prosecution history. Specifically, during prosecution of the '814 patent, the applicant added a cluster of limitations in order to overcome Forbes, a prior art reference that taught, in the applicant's summary, "replacing older versions of software with newer versions by writing over older versions with newer versions." Ex. C at 53. Stated differently: in Forbes, each server only had a single copy of each system file, which was overwritten, unlike the invention in which each container had a file system distinct from the OS's file system for storing its own system files.

In distinguishing Forbes, the applicant made several amendments, each of which relate to this distinction between **container** and **operating system**:

- The containers must have "a unique root file system that is different from an operating system's root file system," *i.e.*, the limitation at issue here (Ex. C at 39 (underlining in original to show added language);

- The containers must include "copies or modified copies of the associated local system files" in the form of "associated system files," which "associated system files" are distinct from the "local system files" stored in the operating system's root file system (*id*.); and

- The claimed "associated local system files" (within the operating system) must "<u>remain</u> resident on the server," in contrast to Forbes's teaching of replacing them with different files (*id.*).

Thus, the amendments made clear that ***containers*** have a unique root file system that is distinct from the ***operating system's*** root file system, and the system files stored in the container root file system are distinct from the operating system's system files which remain resident on the system (e.g., in the operating system's root file system).

Oracle's construction does not purport to be based on the plain meaning of these amendments (much less the plain meaning of the claim language Oracle purports to construe). Instead, Oracle alleges that its construction is supported by the file history's citation to the specification as providing ***an example of written description support*** for the amendments discussed above. *See* Dkt. 41 at 12 (quoting Ex. C at 51); Ex. C. at 51 ("the following text is found which supports the amendments to Claim 1…."). Oracle, unsurprisingly, recites no authority that citation to a specification for written description support constitutes "clear and unmistakable disclaimer," as required. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012)

Oracle additionally cites to a statement in the file history regarding how "the claimed invention is defined" (Dkt. 41 at 12-13, selectively quoting Ex. C at 52–53), but the actual sentence that relates to how the invention is defined provides no support whatsoever for Oracle's clear disregard for the plain meaning of this limitation. *See* Ex. C. at 52 ("Applicants' claimed invention is defined as having 'secure' containers of application software which include OS files that are <u>copies or modified copies</u> of OS files while preserving the original OS files by 'not' overwriting them."). Indeed, this definitional sentence is directly ***inconsistent*** with Oracle's construction,

because Oracle's construction does not account for the distinction between "OS" and container as the plain claim language requires.

Other portions of the specification, which are not part of the "defined" sentence, describe what is ***possible*** based on this distinction, and do not relate to claim requirements. *See, e.g.*, Ex. C at 54 (explaining that "different containers ***may*** have different versions of the same software," whereas "Forbes et al. do ***not allow*** this"). None of this disclosure remotely rises to unmistakable intent to redefine the plain claim language.

Accordingly, Oracle's proposed construction should be rejected, and this term should be given its plain meaning.

### C.    Oracle's attacks on the validity of the '058 patent are both moot and incorrect

#### 1.    (Mooted) "critical system elements" ('058 patent, claim 1)

If the Court considers Oracle's proposals for the dismissed '058 patent, it should reject Oracle's arguments. U.S. Patent No. 7,784,058 (Ex. 5) provides an unambiguous definition of the phrase "critical system element[s]," stating what a CSE *is*, not merely providing examples or embodiments. The definition has two basic requirements: first, the CSE is "'normally' supplied by an operating system"; second, it is "critical to the operation of a software application."

Regarding the former requirement, the patent specification provides further context, explaining: "It is traditionally the task of an operating system to provide mechanisms to safely and effectively control access to shared resources. In some instances the centralized control of elements, critical to software applications, hereafter called critical system elements (CSEs)[,] creates a limitation caused by conflicts for shared resources." '058 Patent at 1:22-27. This illustrates the conventional arrangement wherein CSEs are "normally" provided by an operating system (i.e., they are provided by the operating system if the structure of the operating system is

not modified beyond its default operation). The specification also provides contrasting examples of the "invention," consistent with the claims, where "some system elements that are critical to the operation of a software application *are replicated from kernel mode, into user mode*…. These system elements are contained in a shared library." *Id.* at 9:15-19 (emphasis added). The specification parallels the claim requirements and confirms that the OSCSEs recited in limitation 1(b) generally correspond to the operation of a conventional system (where the operating system provides the critical system elements), whereas the SLCSEs of limitation 1(c) generally correspond to a non-conventional aspect of the claimed invention (where the critical system elements are stored in a shared library, outside of the operating system).

Defendants provide a declaration of Dr. Keromytis (Ex. G) that alleges indefiniteness on two separate bases. First, that a POSITA would allegedly be unable to determine whether a service is "normally supplied by an operating system." And second, that a POSITA would allegedly be unable to determine whether a service is "critical to the operation of a software applications." Each of these allegations fails for the reasons set forth below.

**First**, Dr. Keromytis contends that a POSITA would supposedly be unable to determine "whether a service is 'normally supplied' by an operating system" because that "differs from one operating system to another." Ex. 6 ¶ 39. But Dr. Keromytis's opinion in this regard ignores the fact that the claim recites a "computing system… comprising… *an operating system*," and then further recites critical system elements. In this context, it is apparent that whether a service is *normally* supplied by "an operating system" would be referring to the *same* "operating system" recited in claim 1. In other words, as long as the service is normally supplied by the *claimed* "an operating system," it is "normally supplied by an operating system" within the context of claim 1.

And under this common sense understanding of the claim language, Dr. Keromytis provides no coherent theory that a POSITA would be unable to understand whether services are "normally" supplied by the particular operating system within utilized within the "system" of claim 1. Indeed, Dr. Keromytis's opinion is that "[a] POSITA would not have been aware of any objective standards to determine whether a 'service or parts of a service' was 'normally supplied' *without knowing the particular version of the operating system in question*" (*id.* ¶ 40 (emphasis added)), thus acknowledging that a POSITA *would* be able to determine whether a service was "normally supplied" with respect to a *specific* operating system as the claims require.

**<u>Second</u>**, Dr. Keromytis contends that "[w]hether a service is 'critical' to the operating of a software application is subjective, and will depend on the specific context of the software application, including its specific functionalities," and would "also depend[] on the operating system in question." *Id.* ¶¶ 35-36; *see also id.* ¶ 38 ("Thus, the 'critical' quality of any service would not only depend on the software applications a POSITA may consider, but also on the operating systems, the universe of which is not defined by the '058 Patent."). Dr. Keromytis is *explicit* that he arrived at his conclusion that "critical" is indefinite on the basis that the '058 Patent does not identify the "software applications" or "operating systems" relevant to the analysis, such that a POSITA would not know what applications and operating systems to "consider":

> 38.    Thus, the "critical" quality of any given service would not only depend on the software applications a POSITA may consider, but also on the operating systems, the universe of which is not defined by the '058 Patent. Again, the specification and prosecution history of the '058 Patent provide no objective standard to guide a POSITA's determination of what makes a service "critical."

*Id.* ¶ 38.

But Dr. Keromytis's assumption is incorrect. The **claim** recites both "an operating system" and "a plurality of software applications." '058 Patent at 10:51-59. Thus, the "software applications" and "the operating system" **are** defined in the context of claim 1—it is the operating system and software applications mapped to the "operating system" and "software applications" of claim 1. As explained above, Dr. Keromytis does not dispute that criticality of services **would be** understandable to a POSITA with respect to a **specific** operating system as the claims require. Because his and Oracle's claim construction arguments are based on a false assumption, they fail.

### 2.    (Mooted) "functional replicas" ('058 patent, claim 1)

If the Court considers Oracle's proposals for the dismissed '058 patent, it should reject Oracle's argument. The Federal Circuit has explained that "[b]ecause language is limited, we have rejected the proposition that claims involving terms of degree are inherently indefinite." *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). "Thus, a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Id.* (internal quotation marks omitted). "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). In determining whether the patent has provided sufficient guidance for a term of degree, a reviewing court should "look to the written description for guidance." *Id.* at 1371.

Defendants again rely on Dr. Keromytis's declaration, which contends that "replica" (but not "functional replica") has a lexicographic definition, *i.e.* "a CSE having similar attributes to, but not necessarily and preferably not an exact copy of a CSE in the operating system (OS)," and that definition is indefinite as a term of degree because of the term "similar attributes to." Ex. G ¶ 55. This contention fails at both steps.

First, Dr. Keromytis's primary focus on a single sentence from the patent specification ignores the claim context and the full disclosure of the patent specification. In particular, the claim term is "functional replica," not "replica." Even if the generic description of "replica" were indefinite (it is not), the limitation to functional replicas provides important clarification.

The specification contains an additional description of the scope of "the term replica" specifically in the context of *functional* replicas: "The CSE library includes replicas or substantial functional equivalents or replacements of kernel functions. The term replica, shall encompass any of these meanings, and although not a preferred embodiment, may even be a copy of a CSE that is part of the OS." '058 Patent at 8:27-32; *see also id.* at 9:52-56 ("The term replication means that like services are supplied [*i.e.*, that] essentially a same functionality is provided."). These sentences explicitly state what scope is "encompass[ed]" by "the term replica": (1) substantial functional equivalents of kernel functions; (2) replacements of kernel functions; and (3) copies of OSCSEs (*i.e.*, kernel functions). Of these three categories, "substantial functional equivalents" is logically the broadest, since either a replacement or a copy of a kernel function/OSCSE would necessarily also be functionally equivalent.

Accordingly, the phrase "functional replica" does not require mere similarity, but rather (at a minimum) "substantial functional equivalen[ce]." '058 Patent at 8:27-32.

Dr. Keromytis's discussion of this "substantial functional equivalents" language is both (1) conclusory and (2) inconsistent with inquiries that the Supreme Court assigns to factfinders in evaluating the doctrine of equivalents. Specifically, Dr. Keromytis contends that "the term 'substantial' is a subjective term of degree" such that a POSITA would be unable to determine whether a function is a "substantial functional equivalent" of another. Ex. G ¶ 62. Dr. Keromytis provides no basis for his opinion, other than that "substantial" is a "term of degree." But his opinion

that "substantial" is indefinite is directly inconsistent with Supreme Court precedent that whether infringement under the doctrine of equivalents is satisfied should be measured by respect to whether the accused product "performs substantially the same function" as recited by a claim. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38 (1997) (quoting *Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125 (1877)). Dr. Keromytis's argument, if accepted, would be directly inconsistent with a core premise underlying longstanding Supreme Court precedent—that factfinders *are* able to determine substantial functional equivalence.

Accordingly, Defendants' argument that "functional replica" (which the patent makes clear extends to the "substantial functional equivalents of a kernel function"—'058 Patent at 8:27-32) is indefinite should be rejected.

## IV.    CONCLUSION

For the foregoing reasons, VirtaMove respectfully requests that its proposed constructions be adopted for the '814 patent, and requests that the Court find Oracle's arguments regarding the '058 patent to be moot in light of the dismissal of VirtaMove's claims regarding that patent.


Dated:  August 25, 2025                    Respectfully submitted,

                                           */s/ Reza Mirzaie*
                                           Reza Mirzaie
                                           CA State Bar No. 246953
                                           Marc A. Fenster
                                           CA State Bar No. 181067
                                           Neil A. Rubin
                                           CA State Bar No. 250761
                                           Jacob R. Buczko
                                           CA State Bar No. 269408
                                           James S. Tsuei
                                           CA State Bar No. 285530
                                           James A. Milkey
                                           CA State Bar No. 281283
                                           Christian W. Conkle

CA State Bar No. 306374
Jonathan Ma
CA State Bar No. 312773
Daniel Kolko
CA State Bar No. 341680
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone: 310-826-7474
Email: rmirzaie@raklaw.com
Email: mfenster@raklaw.com
Email: nrubin@raklaw.com
Email: jbuczko@raklaw.com
Email: jtsuei@raklaw.com
Email: jmilkey@raklaw.com
Email: cconkle@raklaw.com
Email: jma@raklaw.com
Email: dkolko@raklaw.com

Qi (Peter) Tong
TX State Bar No. 24119042
8080 N. Central Expy, Suite 1503
Dallas, TX 75206
Email: ptong@raklaw.com

**ATTORNEYS FOR PLAINTIFF
VIRTAMOVE, CORP.**

## **CERTIFICATE OF SERVICE**

I certify that this document is being served upon counsel of record for Defendants on August 25, 2025 via CM/ECF.

/s/ *Reza Mirzaie*