IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| VIRTAMOVE, CORP.<br><br>          Plaintiff,<br><br>     v.<br><br>ORACLE CORP.<br><br><br>          Defendant. | Case No.  7:24-cv-000339-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>▉▉▉▉▉▉▉▉ |

**PLAINTIFF VIRTAMOVE, CORP.'S OPPOSITION TO
ORACLE'S MOTION TO TRANSFER**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Reasons to Summarily Deny the Transfer to NDCA | 1 |
| | A. Oracle Admits it Fails to Meet the Burden of Proof Required by *In re Clarke* | 1 |
| | B. Oracle's Fundamentally Unreliable Evidence Should be Excluded | 2 |
| | C. This Court Should Follow Judge Gilstrap's Decisions | 4 |
| III. | The Private Interest Factors Weigh Against Transfer | 4 |
| | A. The Fifth Circuit's Rigid 100-Mile Rule Controls | 4 |
| | B. Many Willing VirtaMove Witnesses Weigh Against Transfer | 5 |
| | C. Many Willing Oracle Witnesses Weigh Against Transfer | 6 |
| | D. The Compulsory Process Factor Weighs Against Transfer | 10 |
| | E. Ease of Access to Evidence Weighs Against Transfer | 12 |
| | F. Other Practical Problems Weigh Against Transfer | 13 |
| IV. | Argument: The Public Interest Factors Weigh Against Transfer | 13 |
| | A. The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant. | 13 |
| | B. The NDCA is Congested, and this Weighs Against Transfer | 15 |
| | C. Conflict of Laws and Familiarity With Governing Law Are Neutral | 15 |
| V. | Conclusion | 15 |

# TABLE OF AUTHORITIES

**Cases**

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ................................................................................................ 2

*In re Apple Inc.*,
  No. 2024-129, 2024 WL 3886316 (Fed. Cir. Aug. 21, 2024) .............................................. 2, 5

*In re Clarke*,
  94 F.4th 502 (5th. Cir. 2024) ........................................................................................ passim

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ........................................................................................... 14

*In re TikTok,*
  85 F.4th 352 (5th Cir. 2023) ......................................................................................... 4, 5, 14

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ........................................................................................... 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................ 2, 4, 14

*Resonant Sys., Inc. v. Apple, Inc.*,
  No. MO:23-CV-00077-ADA, 2024 WL 4346391 (W.D. Tex. Apr. 18, 2024) ..................... 3

*Sonrai Memory Ltd. v. Oracle Corp.*,
  No. 6:21-CV-00116-ADA, 2022 WL 315023 (W.D. Tex. Feb. 2, 2022) ........................ 1, 12

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ................................................................................................................ 5

*Winner Int'l Royalty Corp v. Wang*,
  202 F.3d 1340 (Fed. Cir. 2000) ............................................................................................. 5

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................................. 1, 4

35 U.S.C. § 271 ........................................................................................................................ 15

**Rules**

Fed. R. Evid. 702(c) ................................................................................................................... 3

I.      **Introduction**

Oracle's transfer motion is baseless because Oracle has its principal place of business and world headquarters in Austin, with approximately 3,000 employees occupying roughly 900,000 square feet located at 2300 Oracle Way. *Sonrai Memory Ltd. v. Oracle Corp.*, No. 6:21-CV-00116-ADA, 2022 WL 315023, at *1 (W.D. Tex. Feb. 2, 2022). An overwhelming number of party and non-party witnesses would be inconvenienced by transfer to California. VirtaMove consents to Oracle's alternative request to transfer to Austin, so the Court should summarily exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to Austin and be done with it.

VirtaMove found dozens of relevant witnesses in Texas that Oracle failed to mention. *See* Sections III(B)–(E) below. Searching LinkedIn reveals that Oracle has 119 and 272 people in Texas who mention case-specific terms like "container" or "Kubernetes," respectively, in their profiles. Ex. 69; Ex. 70. Oracle is actively hiring for 33 Docker-related and 32 Kubernetes-related jobs positions in Austin. Ex. 71; Ex. 72. Eighteen Oracle employees in Texas have access to Oracle's source code. *See* Section III(E) below. Oracle cannot credibly explain how it missed all of these clearly relevant Texas witnesses.

II.     **Reasons to Summarily Deny the Transfer to NDCA**

The Court may summarily deny Oracle's transfer motion in three different ways. First, Oracle admitted that it did not meet the necessary burden of proof as a matter of law. Second, the Court may exclude Oracle's unreliable evidence using *Daubert*-type reasoning and deny the transfer motion for lack of evidence. Third, the Court can summarily adopt Judge Gilstrap's reasoning from related cases.

A.      **Oracle Admits it Fails to Meet the Burden of Proof Required by *In re Clarke***

"[T]he plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed." *In re Volkswagen of Am., Inc.*, 545 F.3d 304,

1

315 n.10 (5th Cir. 2008). This is "a burden of proof question," and "it places a significant burden on the movant to show good cause for the transfer." *Id.* "[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party **must adduce evidence** and arguments **that clearly establish good cause** for transfer based on convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (emphasis added).

> Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*In re Clarke*, 94 F.4th 502, 508 (5th. Cir. 2024)  (internal citations omitted, emphasis original).

Oracle's Transfer Motion fails to even acknowledge this controlling burden of proof, and Oracle makes no argument that this burden of proof was met. Dkt. 25. When Oracle was served with the interrogatory to "Identify every witness Oracle is committed to making materialize in court, the topics of their testimony, and the estimated duration of their testimony," Oracle responded: "it is premature to determine whether or not they, or others, will 'materialize' in court." Ex. 97 at 10.  Thus, Oracle directly admitted that it failed to meet *Clarke*'s burden of clearly demonstrating that proposed witnesses will "*actually* materialize," and the motion to transfer to the NDCA can be summarily denied because Oracle made no argument that it met this burden.

### B. Oracle's Fundamentally Unreliable Evidence Should be Excluded

*Clarke* reiterated that Oracle needed to supply evidence that clearly demonstrates (beyond a preponderance) that transfer will result in a significant gain in convenience. *See* Section II(A), above. Instead, Oracle provided unreliable evidence that, at best, proves that transfer might increase the convenience to a subset of Oracle employees if all east coast witnesses are ignored and if Oracle's Texas employees are ignored.  Oracle thus fails to meet the burden of proof. *See In re Apple Inc.*, No. 2024-129, 2024 WL 3886316, at *2 (Fed. Cir. Aug. 21, 2024) (denying

2

petition because "the court plausibly found deficiencies in Apple's declarations and presentations of the evidence concerning unidentified individuals as witnesses and failure to provide information about the location of witnesses and sources of proof related to what the court reasonably deemed as relevant"). The Court dealt with this same tactic in *Resonant Sys., Inc. v. Apple, Inc.*, where the burden of proof was not met when

> Apple has failed to provide the factual foundation necessary to evaluate the relative convenience of the present and proposed venues. . . . First, Apple supports its briefing with declarations that are too vague and generalized . . . . Second, and perhaps more irksome, Apple chose declarants who lack personal knowledge (1) as to employees located at Apple's Austin campus and (2) any access to relevant evidence those employees may possess. The Court therefore cannot meaningfully determine whether Apple's sources of proof are "relatively easier to access" in NDCA than WDTX. Because the standard is one of "relative" ease of access—the burden of which is on the movant to show—Apple here must do more than thumb one side of the scales to meet its burden.

No. MO:23-CV-00077-ADA, 2024 WL 4346391, at *4 (W.D. Tex. 2024) (footnotes omitted). Here, Oracle's motion failed to weigh the inconvenience that will be caused to its Austin and Texas-based employees, which are overwhelming. *See* Section III(B)–(E) below.

### 1. Oracle's evidence is incomplete and its methodology is unreliable

Oracle's methodology was fundamentally unreliable and should be excluded under *Daubert* principles, which merely require "reliable" methodology. Fed. R. Evid. 702(c). *Clarke*'s requirement to clearly demonstrate that a significant gain in convenience will actually materialize, beyond a preponderance, is much higher than mere reliability.

Oracle did no objective searching to identify witnesses. Instead, Oracle investigated by asking its California based witnesses who were the "key" or "main" employees or "decision makers," which naturally resulted in the identification of office colleagues in California. Oracle unilaterally decided who the "key" witnesses and "decision-makers" are instead of identifying all relevant witnesses. Dkt. 25 at 5–6; Ex. 92 at 17:1–19:10, 36:3–38:5, 39:2–40:8, 61:24–62:5,

3

99:12–20. When selecting employees to interview, Oracle appears to have assumed that the LinkedIn profile information for its listed Texas employees was inaccurate and thus did not investigate them (except those who communicated with VirtaMove/AppZero). Ex. 92 at 79:20–81:21, 95:13–96:23. In other words, Oracle intentionally cherry-picked witnesses.

Oracle's witnesses should not be trusted because evidence refutes their testimony. For example, Oracle's corporate witness testified that for Jeff and Daniel's team, "there was no one in Texas that was working with him on the product." Ex. 92 at 37:7–19. But Oracle also produced a spreadsheet that appears to show that Daniel and Jeff have team members from Texas. Ex. 93 at 1. When asked to do an objective email search, it was revealed that there are 30 Oracle employees in Texas who received at least 5 emails this past year from the "Key Oracle Employees" identified in Oracle's motion, where the emails contain case-specific keywords. Ex. 83 at 12.

### C. This Court Should Follow Judge Gilstrap's Decisions

Judge Gilstrap has denied similar transfer motions by Hewlett Packard Enterprise and IBM against VirtaMove. Ex. 73; Ex. 74. HPE's and IBM's transfer motions were stronger than Oracle's because neither HPE nor IBM are headquartered in Austin.

## III. The Private Interest Factors Weigh Against Transfer

### A. The Fifth Circuit's Rigid 100-Mile Rule Controls

28 U.S.C. § 1404(a) requires considering "the convenience of parties and witnesses," not to exclude consideration of parties outside the state. For witness convenience, the Fifth Circuit's 100-mile rule controls: "When the distance between an existing venue for trial ... and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008); *In re TikTok*, 85 F.4th 352, 361 (5th Cir. 2023) (holding distant witnesses in China, outside of both venues, favor transfer). That is the end of the inquiry.

4

It is error when a "conclusion ignores our 100-mile test." *Id.* at 361. Any dicta regarding travel time may support the 100-mile test, but it cannot be used to ignore the 100-mile test.

The Federal Circuit does not "rigidly" apply the 100-mile rule. *E.g., In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020). But according to *TikTok*, this is error. On issues of procedure, Fifth Circuit law controls. *Winner Int'l Royalty Corp v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)).

Judge Gilstrap's rulings from the related *IBM* and *HPE* cases are dispositive. IBM and HPE "asks this Court to disregard the inconvenience to [VirtaMove]'s witnesses because 'they will have to travel a significant distance to either venue.' . . . The Court disagrees that such significant discounting is warranted." Ex. 74 at 14; Ex. 73 at 14. Thus, weight should be given to VirtaMove's witnesses under the rigid 100-mile rule.

**B.    Many Willing VirtaMove Witnesses Weigh Against Transfer**

<u>5 VirtaMove Witnesses.</u> VirtaMove is a small company, so all five of its active employees (Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antoine, and Emanuel Sousa) likely have some relevant knowledge regarding VirtaMove's claims, including the technical operation of VirtaMove's products, VirtaMove's sales, the value of the patented technology, and/or VirtaMove's documents. Ex. 75 at 13. They all reside in eastern Canada in the greater Ottawa, Ontario, Canada area, which is closer to Texas than the NDCA by 1,213 miles. *Id.*; Ex. 76–77. They will find the WDTX more convenient under the 100-mile rule.

<u>4 Inventors and Former[1] VirtaMove Employees.</u> VirtaMove retained the following witnesses as consultants in previous, related VirtaMove cases, and their testimony will be similarly

---

[1] For simplicity, "former" individuals worked for VirtaMove Corp. or its predecessors AppZero or Trigence.

5

relevant in this case against Oracle. Paul O'Leary and Dean Huffman are named inventors of the VirtaMove patents, and both reside in Kanata, Ontario, Canada, which is 759 miles closer to Texas. Ex. 78 ¶¶ 3–4, 10; Ex. 79 ¶¶ 3–4, 10. Mark Woodward is a former VirtaMove vice president of product engineering and resides near Ottawa, Ontario, Canada. Ex. 80, ¶¶ 2–3. Greg O'Connor is a former CEO of AppZero and has homes in both Massachusetts and California. Ex. 81, ¶ 3–4. There is no evidence indicating where O'Connor will be when trial occurs, so he should be presumed to be in Massachusetts, and Oracle has the burden to clearly demonstrate otherwise. All of these witnesses were deposed in the related *HPE* and/or *IBM* cases in the EDTX.

Prosecution Counsel. VirtaMove's prosecution counsel include Christopher Regan and David Carus in Florida, and Tietelbaum & Burk in Ottawa, Ontario, Canada. Ex. 75 at 14–15. VirtaMove's prosecution counsel will testify that they acted with candor and honesty to the USPTO. Dkt. 25 at 5 n.2 (Oracle anticipates asserting inequitable conduct).

### C. Many Willing Oracle Witnesses Weigh Against Transfer

Oracle failed to identify the following employees in its transfer motion. They are relevant witnesses whose convenience will be affected by transfer to the NDCA. Most of them explicitly mention the technology (OKE, Kubernetes, Docker, Oracle Cloud Infrastructure/Registry, Migration, Container) that is at issue in this case. *See generally* Dkt. 28-1 (infringement contentions with these unique keywords). These Oracle witnesses are all closer to Midland.

| Name & Location | Relevance | Exhibit |
|---|---|---|
| Ninad Adhav, Austin, TX | Oracle Solutions Engineer III, "Skilled in Oracle Cloud, Kubernetes… and Docker." | Ex. 1 at 1 |
| Paul Beriswill, Cedar Park, TX | "Principal Site Reliability Engineer" at Oracle. "Leveraged Oracle Cloud Infrastructure Container Engine for Kubernetes (OKE) managed clusters to automate scaling of test resources" | Ex. 2 at 1, 2 |
| Jayant Bhopale, Austin, TX | "Site Reliability Engineer at Oracle Cloud [Kubernetes Engine]" (brackets original) | Ex. 3 at 1 |
| David Cabelus, | "Senior Principal Product Manager" at Oracle. | Ex. 4 at 1 |

6

| | | |
|---|---|---|
| New Hope, PA | "Led the Verrazzano Enterprise Container Platform project from inception to market launch" | |
| Jason Cotton, Austin, TX | "Senior Director Software Development" at Oracle. "I … drive that product. This product introduced docker containers, public cloud deployments and other current technologies into the development process." | Ex. 5 at 1 |
| Dennis Creary, New York, NY | "Global Key Account Director at Oracle." Had communications with VirtaMove/AppZero relevant to willfulness. | Ex. 6 at 1; Ex. 75 at 10. |
| Stephen Cross, Ontario, CA | "Director of Product Management, Oracle Cloud Infrastructure" who is "Leading the Oracle Cloud Infrastructure (OCI) Multicloud and Migration services product management team . . . . Responsible for … Oracle Cloud." | Ex. 7 at 1–2 |
| Erin Dawson, Pittsburgh, PA | "Sr. Developer Marketing Manager" at Oracle | Ex. 8 at 1 |
| Trey DeJohn, Austin, TX | "Regional Vice President – Strategic Accounts" at Oracle. His mission is "to evangelize Oracle's Technology Portfolio." Had communications with AppZero/VirtaMove relevant to willfulness. | Ex. 9 at 1; Ex. 75 at 10. |
| Vishwa Gandhi, Austin, TX | Software Development Engineer (SDE) at Oracle. She is "the kind of person who can explain Kubernetes over coffee." "I'm deploying workloads on Oracle Kubernetes Engine (OKE)." | Ex. 10 at 1 |
| Karthikeyan Govindaraj, Austin, TX | "Principal SRE" at Oracle. "Experienced DevOps & Cloud Native developer with a demonstrated history of working in the financial services industry. Skilled in Kubernetes, Docker, OpenShift and public cloud infrastructures." | Ex. 11 at 1 |
| Gregory King, Littleton, CO | "Senior Principal Product Manager for OCI" at Oracle. He has written about "Fully Automated Disaster Recovery for Oracle Kubernetes." | Ex. 12 at 1; Ex. 13 at 2; Ex. 14 at 2 |
| Olga Gupalo, Lviv, Ukrane | "Principle Technical Writer" at Oracle. She has written about how to "Create Kubernetes Clusters and Deploy Containers to Oracle Cloud from VS Code." | Ex. 15 at 1; Ex. 16 at 1 |
| Austin Hinckley, Overland Park, KS | "Senior Software Engineer" at Oracle. "Platform engineer supporting a platform of 300+ Java microservices deployed on Kubernetes in the healthcare space." | Ex. 17 at 1 |
| Mark Hura, Westlake, OH | "Executive Vice President & General Manager, Oracle North America." "I have the privilege of leading Oracle's North America Cloud and Technology business, including cloud infrastructure." | Ex. 18 at 1; Ex. 19 |
| Kailas Jawadekar, Austin, TX | "Director Product Management | Product Marketing @ Oracle." Wrote "Introducing the best platform for AI workloads – OCI Kubernetes Engine (OKE)" | Ex. 20 at 1; Ex. 21 at 1 |
| Rod Johnson, NYC Area | "EVP, Applications North America" at Oracle. "Proud Leader of the fastest growing cloud business in the Industry" | Ex. 22 at 1, 3 |

7

| Adao Oliveira Junior, Austin, TX | "Cloud Solutions Architect" "I actively contribute to open-source projects and industry initiatives, such as Kubernetes-sign-multicluster." Presented "Multicloud Applications Using OCI Traffic Steering and a Container Platform" including "OCI Container Engine for Kubernetes, and Oracle Verrazzano." Presented "Securing Your Managed Kubernetes with Falco" and gave "a hands-on demonstration of using Oracle Cloud Infrastructure Engine for Kubernetes." Live streamed "how to deploy an App using the Kubernetes APIs." Presented "Secure Containerized Code" involving "the deployment of both solutions to an OKE (Oracle Kubernetes Engine) environment" | Ex. 23 at 1; Exs. 24-29 |
| --- | --- | --- |
| Dean Kemp, Louisville, CO | "Senior Director, Oracle." "Managed team to implement Secure Cloud Computing Architecture as a Service." Had communications with VirtaMove relevant to willfulness. | Ex. 30 at 1; Ex. 75 at 10. |
| Joanne Lei, DFW Metroplex | "Master Principal Cloud Architect @Oracle Cloud." Blogged about "Serving LLM using HuggingFace and Kubernetes on OCI" and "how to deploy fine-tuned large language model (LLM) inference containers on Oracle Container Engine for Kubernetes (OKE)" | Ex. 31 at 1; Exs. 32–33 |
| John Lemuth, Austin, TX | "Cloud Operations Manager at Oracle" and "Cloud Engineer Team Lead" | Ex. 34 at 1 |
| Mark Lindros, Georgetown, TX | "Architect at Oracle." "Mark also develops using many web technologies, including … Docker, Kubernetes, Oracle Cloud Infrastructure (OCI)." "I am responsible for many projects that surround our publishing process. Agile, Jira, git, Docker, cloud, Kubernetes, Oracle Cloud Infrastructure… and more." | Ex. 35 at 1-2 |
| Jason Maynard, Nashville, TN | "Executive Vice President, Revenue Operations" at Oracle | Ex. 36 at 1 |
| Sophia M. Otero, New Orleans, LA | "Principle Technical Program Manager; Oracle Cloud Infrastructure" at Oracle. "E2E prioritized and managed OCI migration … compute, Kubernetes, and Oracle database systems." | Ex. 37 at 1-2 |
| Marcel Boermann-Pfeifer, Niedersachsen, Germany | "Master Principal Technology Solution Engineer" at Oracle. Wrote about how packages for "Oracle AI" consists of "prepared containers that can be set up and operated locally using the **docker** or **podman** command in a small Kubernetes cluster (minikube, k3s or similar)" | Ex. 38; Ex. 39 at 1 |
| Steve Phillips, Plano, TX | "Enterprise Architect" at Oracle. "Steve worked at DXC where he was a Principal Product Architect responsible for developing … DXC's Managed Oracle Cloud including Oracle Database, … Kubernetes, and Docker. Steve is a Oracle and GCP Certified Cloud Architect." | Ex. 40 at 1 |
| Kellsey Ruppel, Cumberland, Wisconsin | "Principal Product Marketing Director at Oracle" Wrote about how "EZ Cloud runs its AI-powered A/P platform in a Kubernetes cluster on OCI" | Ex. 41 at 1; Ex. 42 at 1 |

8

| Prasanna Sahu, Austin, TX | "IT Principal Consultant, Cloud Operations" at Oracle. "I led projects focusing on Public Cloud services and container orchestration technologies like Kubernetes and Docker." | Ex. 43 at 1-2 |
|---|---|---|
| Himanshu Shukla, Greater Boston Area | "Product Management Leader" at Oracle. "Senior Principal Product Manager, OCI Development Product Management." Wrote about "Oracle Cloud for Telcos" including "the ability to operate with open Kubernetes" and "how Telco-ready managed Kubernetes: Oracle Container Engine for Kubernetes (OKE) offers a mature platform for deploying and managing cloud native workloads" | Ex. 44 at 1; Ex. 45 at 3-4 |
| Maria Smith, Ireland | "Executive Vice President, Finance, Chief Accounting Officer (CAO) Oracle Corporation" with knowledge likely relevant to damages. | Ex. 46 at 1 |
| Thakur Nanda, Austin, TX | "Senior Site Reliability Developer" at Oracle. "Knowledge in Docker, VMWare, Kubernetes, Ansible and Jenkins" | Ex. 48 at 1 |
| Saipriya Thirvakadu, Austin, TX | "Principal Cloud Engineer" at Oracle. "integrating serverless functions, Kubernetes and Docker to streamline app development and deployment workflows." | Ex. 49 at 1–2 |
| Chibuzo Ufomba, Austin, TX | "Software Engineer" at Oracle. "Managed Kubernetes clusters, including deployment, scaling, and troubleshooting of containerized applications" | Ex. 50 at 1–2 |
| Pavan Vakkalam, Liberty Hill, Texas | "Senior Member of Technical Staff at Oracle Cloud Infrastructure" "Building an entire terraform code base from the scratch to onboard all the infrastructure, such as compute instances running on top of OKE (Oracle Kubernetes Engine)." "Writing helm charts for deploying the application into docker containers in kubernetes pods from oracle container registry." "Writing APIs to call Kubernetes cluster to fetch pod/container information." | Ex. 51 at 1–2 |
| Lokesh Verma, Austin, TX | "Sr Manager Software Development (SRE) @ Oracle | OCI, Databases." "At Oracle, my current role as Senior Manager of Software Development (SRE) leverages my expertise in Oracle Kubernetes Engine and cloud applications to direct high-impact projects." "Top Skills … Oracle Kubernetes Engine" | Ex. 52 at 1 |
| Brian Wood, Germantown, NY | "AI & Developer Services Product Marketing" at Oracle. Wrote about "Serverless Kubernetes costs for EKS, AKS, GKE, and OKE" and pricing of Oracle's Kubernetes service against competitors. Wrote "Kubernetes cost comparison: Who provides the best value?" to conclude that "OCI delivers the best value for Kubernetes" | Ex. 53 at 1; Exs. 54–56 |

9

Additionally, the Oracle employees in Texas who have access to and/or contributed to the source code for the accused products are also relevant—they will likely prove up the source code and be asked to explain its operation and changes over time. *See* Section III(E), below.

**D.    The Compulsory Process Factor Weighs Against Transfer**

Holding trial in Texas allows more of the relevant third-party witnesses to attend trial.

<u>2 Former VirtaMove Employees in Texas</u>. Two former VirtaMove employees, David Roth and Ernesto Benedito reside near Dallas, Texas and can only be compelled to attend trial in the WDTX. Ex. 94; Ex. 95. Roth was a former CEO, and Benedito was a former Software Development Team Lead. Roth was deposed in the related IBM case, and VirtaMove intends to call him to trial. IBM also served a subpoena on Benedito, presumably due to his relevance.

<u>Former Oracle Employees in Texas.</u>  These former Oracle employees have relevant knowledge and can only be compelled in Texas.  Former Oracle employees are likely to be called by VirtaMove to provide an unbiased explanation of how Oracle's accused products work and how Oracle sells, markets, and prices the accused products.

| Name & Location | Relevance | Exhibit |
|---|---|---|
| Eric Anderson, Cedar Park, TX | Former "Vice President, Oracle Cloud" where he was "Building Oracle Cloud's Container Engine for Kubernetes" | Ex. 57 at 1–2 |
| Eric Anderson, Austin, TX | Former "Oracle Application Sales Manager" | Ex. 58 at 1 |
| Lucas Gomes, Austin, TX | Former Oracle "Principal Product Manager – OCI Developer Services / Adoption & Experience" who "Led developer adoption and experience initiatives for containers, CI/CD, and automation on Oracle Cloud Infrastructure." | Ex. 59 at 2 |
| Faraz Hemani, Houston, TX | Former "Cloud Sales" at Oracle in Austin.  Had communications with AppZero/VirtaMove relevant to willfulness. | Ex. 60 at 1; Ex. 75 at 10. |
| Charles Kim, Dallas/Fort Worth, TX | "Founder and CEO of Viscosity North America." "He brings over 27 years of Oracle experience."  "Charles has performed numerous zero-downtime migrations of Oracle databases." "Specialties include… Oracle Cloud." Presented about the "Oracle Cloud Infrastructure" as part of "Deploying an Enterprise | Ex. 61 at 1–2 |

| | Kubernetes Cluster in Oracle Cloud with Terraform." | |
|---|---|---|
| Theo Koulianos, Galveston, TX | Former "Industry Sales Executive" at Oracle with knowledge relevant to sales of accused products | Ex. 62 at 1; Exs. 63–64 |
| Bob Quillin, Austin, TX | Founder/CEO of ControlTheory, Inc. Former "Vice President, Oracle Cloud Developer Relations." Worked on "Developing enterprise-grade Container Native, Kubernetes, and Docker offerings for Oracle Cloud Infrastructure and building out the Cloud Native Oracle Cloud Infrastructure Developer community." | Ex. 65 at 1 |
| Brooke Rappaport, Austin, TX | "Director – Grant Thornton Advisors LLC." "I help organizations unlock the potential of Oracle Cloud to drive digital transformation." Former "Application Sales" at Oracle, where she "Managed 30 Oracle Cloud Customers" and knows about Oracle's "order document price negotiations." Relevant to damages case. | Ex. 66 at 1–2; Ex. 67 |
| Wenli Chiou, Austin, TX | Former "Senior Cloud Account Executive" at Oracle who was assigned the "CA; Ottawa" territory where VirtaMove is. Had communications with AppZero/VirtaMove relevant to willfulness | Ex. 68 at 1; Ex. 75 at 10. |
| Sri K., Austin, TX | "Principal Cloud Operations Engineer" at IBM. Former "Storage/cloud Engineer" at Oracle. "With over a decade of experience in Cloud operations," Sri has "[m]anaged Kubernetes clusters to ensure application scalability and high availability in a containerized environment, optimizing performance. Utilized Docker containerization to enhance application portability and streamline development-to-production workflows, reducing time-to-market." "Expertise: Oracle Cloud Infrastructure" | Ex. 47 at 1–2 |

Prior Artists **Did Not** Materialize. When assessing this factor, the Court should not count Oracle's proposed third-party witnesses because Oracle has failed to clearly demonstrate that they will *actually* materialize at trial.

In the *IBM* case, IBM made effectively the same arguments and identified the same third-party witnesses that Oracle relies on. Judge Gilstrap correctly ruled, "Although IBM identifies Solomon Hykes, Jessie Frazelle, Tonis Tiigi, and Derek McGown as unwilling witnesses . . . the Court is unconvinced that IBM has shown that all of these witnesses have relevant, non-redundant testimony that will actually materialize at trial." Ex. 73 at 8–10. Like Oracle, IBM similarly identified "Jonathan Clark, Andrew Tucker, John Beck, Daniel Price, Steven Osman, and Dinesh

11

Subhraveti." *Id*.[2] The IBM case is now past the close of fact discovery, but neither party deposed any of these people to see what they might say at trial (except that VirtaMove deposed John Beck solely because he is an IBM-party witness).[3] Apparently, IBM identified them to manipulate venue, not to call at trial. Oracle's motion relies on similar witnesses and is similarly defective. This Court has no additional evidence presented by Oracle as to why it should diverge from Judge Gilstrap's *IBM* decision. *Id*.

E.  **Ease of Access to Evidence Weighs Against Transfer**

VirtaMove has evidence in eastern Canada that can be more easily transported to the WDTX than to the NDCA. Specifically, VirtaMove has physical evidence relevant to this case at its Kanata, Ontario, Canada office. Originals of VirtaMove's patent files are kept in paper form in two heavy boxes. Ex. 82. Paul O'Leary has an original copy of a Trigence/VirtaMove CD-ROM in Ontario, Canada. VirtaMove's source code is access controlled and limited to its employees and to Mark Woodward in Ontario, Canada. Ex. 75 at 23. Because it is a shorter distance to Texas from Ontario, Canada, VirtaMove can more easily move its evidence to Texas.

This Court has already ruled that Oracle's ability to access electronic documents from its Austin headquarters slightly favors transfer to Austin. *Sonrai*, 2022 WL 315023, at *2.

Oracle's source code is access-restricted, and 

---

[2] Judge Gilstrap harmlessly erred by discounting them because there was only a "low likelihood" of their appearance. Ex. IBM Order at 10. *Clarke* requires that they cannot provide good cause (at all) unless Oracle clearly demonstrates that they will actually materialize. *Clarke*, 94 F.4th at 508.
[3] The *HPE* case settled near the end of discovery, but HPE similarly did not depose these prior artists, and Beck was not deposed in the *HPE* case.



Oracle's source code can be easily accessed in Texas.

Because both physical evidence and source code is more easily accessed in Texas, this factor should weigh against transfer.

### F.  Other Practical Problems Weigh Against Transfer

VirtaMove's case asserting the same patents against Microsoft remains pending in this Court, and the parties there stipulated to transfer to Austin. Ex. 86. The *Microsoft* case will not be transferred to the NDCA.  Keeping this Oracle case allows this Court to conduct a joint *Markman* hearing for Oracle and Microsoft, where the Court need only learn the patented technology once. Similar efficiency arises at the summary judgement stage, where this Court will be familiar with VirtaMove's patents if motions for summary judgment of invalidity or noninfringement are filed in both the Oracle and Microsoft cases.

The *Google* and *Amazon* cases have received transfer orders, but VirtaMove has filed petitions for writs of mandamus.  Ex. 87; Ex. 88.  There is good cause for reversal: 1) the wrong burden of proof was used, and 2) the rigid 100-mile rule was ignored. Ex. 87; Ex. 88.  The transfers in the *Google* and *Amazon* cases will likely be reversed or vacated.

## IV.  Argument: The Public Interest Factors Weigh Against Transfer

### A.  The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant.

13

The local interest factor is neutral because Oracle's products are sold nationwide. Ex. 90. Both the Fifth Circuit and the Federal Circuit have held this factor to be neutral when infringement occurs nationwide. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) ("infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"); *In re Volkswagen*, 545 F.3d 304, 316 (5th Cir. 2008) (citizens of Texas "would be interested to know whether there are [at-issue] products offered for sale in close proximity to the Marshall Division.").

Oracle improperly attempts to double-count itself (a private party) under this public-interest factor, and caselaw prohibits this for three reasons.

First, *Clarke* ruled that this factor must "focus on the *events*—not the *parties*," and "the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." 94 F.4th at 511. Thus, the defendant party's *own, private* design, development, and testing (e.g., incorporating Docker or Kubernetes) cannot affect this *public* transfer factor, which is limited to the interest of a *non-party*.

Second, *Clarke* reinforced the *TikTok* rule that to "identify localized interests properly, we look **not to the parties' significant connections** to each forum but rather the significant connections between a particular venue and **the events that gave rise to a suit**." *Clarke*, 94 F.4th at 502 (cleaned up, emphasis added); *In re TikTok*, 85 F.4th at 364. Oracle's motion admits that Docker and Kubernetes are "in Oracle's products," and *Clarke* explicitly prohibits considering this significant connection of Oracle under this factor. Dkt. 25 at 13.

14

Third, this factor only considers "events that give rise to a suit." *Clarke*, 94 F.4th at 502. Patent infringement only arises under 35 U.S.C. § 271 by making, using, or selling an invention. The design, development and testing of Docker, Kubernetes, or Solaris does not "give rise" to infringement under Section 271, so these activities do not qualify as a public local interest under Fifth Circuit law. Such proxies must "never subsume the ultimate inquiry" of where the suit arose (here, where infringement occurs). *Clarke*, 94 F.4th at 511.

### B. The NDCA is Congested, and this Weighs Against Transfer

When the related *Google* case (7:24-cv-00033-DC-DTG) was transferred to the NDCA, the NDCA effectively admitted that it was congested because "the Northern District is in the process of reassigning over 150 cases to Judge Wise. As we sort through our case load, all responses to the Order Reassigning Case will be processed and rescheduled based on priority. We ask for your patience…" Ex. 91 at 1; Ex. 96. The NDCA was so congested that it could not even set a hearing date to be noticed for a party's motion. Ex. 91 at 1–2.

Reliance on statistics was foreclosed by the Fifth Circuit. *Clarke*, 94 F.4th at 510. Thus, the only type of permissible evidence comes from the Courts themselves, and Oracle has no such evidence. The only admissible evidence for this factor is of the NDCA's congestion. VirtaMove agrees with Oracle that this Court is best positioned to evaluate its own WDTX docket, so this Court should find that this case is moving along faster than the congested Courts in the NDCA.

### C. Conflict of Laws and Familiarity With Governing Law Are Neutral

VirtaMove agrees that these factors are neutral.

## V. Conclusion

Oracle's Motion to Transfer to the NDCA should be denied. The Court may order transfer to Austin using VirtaMove's Proposed Order.

Dated: August 5, 2025					Respectfully submitted,


							By: */s/ Qi (Peter) Tong*

							Reza Mirzaie (CA SBN 246953)
							rmirzaie@raklaw.com
							Marc A. Fenster (CA SBN 181067)
							mfenster@raklaw.com
							Neil A. Rubin (CA SBN 250761)
							nrubin@raklaw.com
							James A. Milkey (CA SBN 281283)
							jmilkey@raklaw.com
							Jacob Buczko (CA SBN 269408)
							jbuczko@raklaw.com
							James Tsuei (CA SBN 285530)
							jtsuei@raklaw.com
							Christian W. Conkle (CA SBN 306374)
							cconkle@raklaw.com
							Jonathan Ma (CA SBN 312773)
							jma@raklaw.com
							Daniel B. Kolko (CA SBN 341680)
							dkolko@raklaw.com
							Mackenzie Paladino (NY SBN: 6039366)
							mpaladino@raklaw.com
							Jefferson Cummings (DC SBN 90027452)
							jcummings@raklaw.com
							Linjun Xu (CA SBN 307667)
							lxu@raklaw.com
							**RUSS AUGUST & KABAT**
							12424 Wilshire Boulevard, 12th Floor
							Los Angeles, CA 90025
							Telephone: (310) 826-7474

							Qi (Peter) Tong (TX SBN 24119042)
							**RUSS AUGUST & KABAT**
							8080 N. Central Expy., Suit 1503
							Dallas, TX 75206
							Telephone: (310) 826-7474

							*Attorneys for Plaintiff VirtaMove, Corp.*

## **CERTIFICATE OF SERVICE**

  Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on August 5, 2025, I electronically filed the foregoing document using the CM/ECF system which will send notifications to all parties of record.  Additionally, a copy of the sealed filings are being sent to all counsel of record via e-mail.

August 5, 2025

                /s/ Peter Tong
                Qi (Peter) Tong